(No. 55739.—

VIVIAN E. KOZAK, Appellee, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Appellant.

*Opinion filed February 18, 1983.—Rehearing denied April 8, 1983.*

Stanley Garber, Corporation Counsel, of Chicago (Gerald W. Shea, Robert R. Retke, Mary K. Rochford, and Jerome A. Siegan, of counsel), for appellant.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde, Marshall E. LeSueur, and Katrina Veerhusen, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

We are called upon here to construe the words "current annual salary" as they are used in section 6—140 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 6—140). The relevant portion of the statute for the purposes of this appeal was amended effective January 1, 1972, and as amended at that time, the statute reads:

> "The annuity for the widow of a fireman whose death results from the performance of an act or acts of duty shall be an amount equal to 50% of the *current annual salary* attached to the classified position to which the fireman was certified at the time of his death and 75% thereof after December 31, 1972, and it shall be payable to the widow until the fireman, had he lived, would have attained the age prescribed for compulsory retirement.
> Thereafter the widow shall receive annuity of an

amount equal to 40% of the *current annual salary* attached to the classified position to which the fireman was certified at the time of his death." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 108½, par. 6—140.

The amendment also provided that it was applicable to widows already receiving benefits as well as those qualifying for pensions after its effective date.

Plaintiff, the widow of a Chicago fire department battalion chief killed in the line of duty in 1970, seeks administrative review for herself and similarly situated annuitants of an order of the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (a city administrative agency). The challenged order, which became effective on January 1, 1974, froze the annuities of widows then receiving benefits at a figure based on fire department salaries in 1973 and directed that future widows were to receive an annuity fixed by the annual salary of their firefighter husbands at the time of their death.

From the time of her husband's death in 1970 until 1972, the plaintiff received an annuity based on the amount of his salary at the time of his death. In 1972 and 1973 the retirement board construed and applied the amendment quoted above to require that the annuity be computed on the annual salary of currently employed firefighters, and as their salaries were changed from time to time the amount of the annuity was to be adjusted to reflect those changes. Battalion chiefs received raises in both of those years, and the plaintiff's annuity was increased because of those raises.

The plaintiff filed a complaint with the retirement board disputing the change brought about by the interpretation of the statute which froze the amount of the existing annuities effective January 1, 1974, at the levels then prevailing regardless of future salary increases firefighters might receive. The retirement board's decision was adverse to the plaintiff, and on administrative review, the circuit court of Cook County dismissed the complaint on the ground that a

widow's annuity under the amended statute is a vested annuity, fixed in amount at the death of the firefighter. The appellate court reversed, holding that the statute required the pension to be computed according to the current annual salary and not the salary at the time of decedent's death. (99 Ill. App. 3d 1015.) The issue is whether the introduction of the words "current annual salary" by the 1972 amendment made the amount of the annuity flexible, changing to reflect salary changes in the fire department, as the appellate court concluded, or whether those words still leave the amount fixed based on whatever the firefighter's salary was when he died, as the circuit court decided. We believe that the appellate court applied the proper interpretation of the statute.

The words used in a statute are to be given their ordinary and popularly understood meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189.) The appellate court relied in part on the definition in the Random House Dictionary of the English Language Unabridged Edition (1966) to determine the meaning of "current." There, the word is defined as meaning "passing in time or belonging to the time actually passing; new, present, most recent." Webster's Third New International Dictionary 557 (1971) defines its meaning as "occurring in or belonging to the present time." We accept and apply these definitions, which are supported by the following cases: *Warren Co. v. Commissioner* (5th Cir. 1943), 135 F.2d 679; *Graham v. Miller* (3d Cir. 1943), 137 F.2d 507; *American Fruit Growers, Inc. v. United States* (9th Cir. 1939), 105 F.2d 722, 726; *Commissioner v. Keller* (7th Cir. 1932), 59 F.2d 499.

As we read them the words of the statute are plain and unambiguous, and they must be given effect as they appear in the statute. We should not attempt to read the statute other than in the manner in which it was written; nor in applying plain and unambiguous language is it nec-

essary to search for any subtle or not readily apparent intention of the legislature. As this court stated in *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133:

"The language of *** the statute is plain and certain and must be given effect by the courts. We cannot read into the statute words which are not within the plain intention of the legislature as determined from the statute itself. [Citations.] We cannot restrict nor enlarge the plain meaning of an unambiguous statute. [Citation.]"

The retirement board argues that the words "at the time of his death" refer to current annual salary, and so the salary on which the annuity is computed is the current annual salary at the time of the firefighter's death. It is clear, however, that the words "at the time of his death" refer to "the classified position to which the firefighter was certified." Were this not so the statute would be lacking in any indication of what the determinative time is for ascertaining the position to which the fireman was certified. The retirement board concedes that the words "at the time of his death" refer to the classified position to which the fireman was certified, but contends that they also refer to "current annual salary." If that interpretation is well founded, there would be no need for the word "current." That word would not be needed to tell us that the applicable salary level is the compensation the fireman was receiving on the date of his death. Each word, clause or sentence of a statute must, if possible, be given some reasonable meaning. (*Hirschfield v. Barrett* (1968), 40 Ill. 2d 224.) To accept the construction the retirement board advances for the words "at the time of his death" would strip the word "current" of any contribution to the meaning of the statute, thus violating the rule of statutory construction which requires a statute to be applied in a way that no word, clause or sentence is rendered superfluous or meaningless. *Arnold v. Board of Trustees* (1981), 84 Ill. 2d 57.

This view is supported by the last-antecedent rule of statutory construction, a rule that this court has frequently

applied, most recently in *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241. (See also *City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 375; *People v. Thomas* (1970), 45 Ill. 2d 68, 72; *Stevens v. Illinois Central R.R. Co.* (1922), 306 Ill. 370, 373.) Applying that rule, the words "at the time of his death" would refer to the last antecedent, which is "classified position," and not to the more remote words "current annual salary."

Another rule of construction applied by Illinois courts to statutes providing for pensions militates in favor of the construction we choose. Our court has recognized that "[t]he purpose of pension laws is beneficial" and has held that "statutes of that character should be liberally construed in favor of those intended to be benefited." (*Colton v. Board of Trustees* (1919), 287 Ill. 56, 61; see also *Board of Trustees v. Department of Insurance* (1976), 42 Ill. App. 3d 155, 159.) The construction of section 6—140 which we favor takes into account the impact of inflation, a consideration which the legislature might well have had in mind in providing for fluid benefits for annuitants.

The board argues that its interpretation of the statute and the meaning it attributes to the word "current" are supported by this court's opinions in *Sup v. Cervenka* (1928), 331 Ill. 459, and *O'Neil v. Harding* (1924), 314 Ill. 516. The language of the pension acts with which those decisions were concerned provided for paying firemen "a monthly pension equal to one-half the amount of salary attached to the rank which he may have held in such fire service at the date of his retirement." *Sup v. Cervenka* (1928), 331 Ill. 459, 461.

Although in both of those cases the court concluded the pension was fixed at the amount of salary the retiree was receiving at the date of his retirement, the word "current" was not used to modify "salary" as it is in the statute being considered in this appeal. In fact, the court pointed out in *Sup* that the pensioners' argument, which the court re-

jected, was that "the pensioner shall receive one-half of the salary *currently* paid to his rank." (Emphasis added.) (331 Ill. 459, 461.) Had the legislature not used the word "current" in the 1972 amendment to the Act, *Sup* and *O'Neil* would be precedents to reckon with. We must presume that in adopting that amendment the legislature was aware of judicial decisions concerning prior and existing law and legislation. (*Heineman v. Hermann* (1943), 385 Ill. 191, 196; *Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 437-38.) Thus, the legislature, by employing the word "current," is presumed to have avoided the result reached in *Sup* and *O'Neil* and intended to adopt the meaning that those decisions rejected.

The retirement board points out that our decision would require more than doubling of the reserve account of the Firemen's Annuity and Benefit Fund, increasing it from approximately $8 million to $19 million. We must assume that in changing the statute the legislature was cognizant of the increased expense of the type of open-ended and fluctuating public pension benefit it was adopting, and therefore the expense of the change does not justify our attempting to rewrite the statute.

In 1971, the Illinois Public Employees Pension Law Commission, which was composed of members of both houses of the General Assembly, issued a report rejecting a proposal to base the widow's annuity on the salaries of currently employed firemen because of the substantial increase in costs that the change would entail. The retirement board regards this report as an authoritative guide to legislative intent which, it argues, the appellate court failed to consider. The short answer is that it appears that the other members of the legislature were not persuaded by the report and chose not to follow it. Rather, the amendment of the pension statute adding the word "current" represented an adoption by the legislature of the substance of the proposal to base the widow's annuity on the salaries

of active firemen which had previously been rejected by the Pension Law Commission. What could be a clearer expression of legislative intent?

Another argument advanced by the retirement board is that the legislature, by its failure to provide any mechanism for funding the increased cost of the pensions, indicated that it had no intention of adopting a plan under which amounts payable would increase as firefighters' salaries increased. In support of this reasoning, the board points to numerous other instances in which the legislature provided financing arrangements for benefits in which future increases were contemplated. The legislature has, however, made provision for funding the expense of pensions provided for by section 6—140 as that section was amended in 1972. Section 6—169 (Ill. Rev. Stat. 1979, ch. 108½, par. 6—169) directs that the city of Chicago shall contribute such sums annually as may be required to provide widow's pension benefits as authorized by section 6—140. Although section 6—165 (Ill. Rev. Stat. 1979, ch. 108½, par. 6—165) provides ceilings on the amount which a city may raise for this purpose, there is nothing in the record to show that providing pensions in fluctuating amounts based on salaries paid firefighters from time to time would exceed the amounts the city of Chicago is authorized to levy.

The retirement board urges that we construe section 6—140 in the context of the pension act as a whole. Only where a statute is ambiguous on its face, however, should courts look to similar statutes as an aid to construction. (See 2A Sutherland, Statutory Construction sec. 51.01 (1973).) In *Tabor v. Mason Dixon Lines, Inc.* (1953), 196 Tenn. 198, 264 S.W.2d 821, the court explained that for the rule of *in pari materia* to be applicable, "it is necessary that the statute to be construed is ambiguous." 196 Tenn. 198, 201, 264 S.W.2d 821, 822.

We are not confronted by ambiguity in the statute; we

find section 6—140 clear on its face. When a statute is clear, there is no reason for courts to search for the motives of the legislature to justify giving the statute a meaning different than the words of the statute indicate, especially when in a case such as this there are no reports of legislative debates to shed light on the intention of the General Assembly. In the absence of a clear ambiguity in the statute there is no reason to consider the wording of similar pension provisions in construing the statute before us.

Even assuming that it would be proper to compare section 6—140 with other pension statutes, the fact that the legislature treats widows of firefighters killed in the line of duty more generously than the beneficiaries of other pension statutes is neither absurd nor impossible to understand. Nor does this indicate that the legislature has acted irresponsibly or justify applying the statute in a manner its wording does not support. When permissible under the Constitution, statutes should be interpreted and applied in the manner in which they are written. They should not be rewritten by a court to make them consistent with the court's idea of orderliness and public policy. (*In re Griffin* (1982), 92 Ill. 2d 48, 52.) In *People v. Wilcox* (1908), 237 Ill. 421, 428, this court observed: "It is not for the courts to pass upon what the *** laws ought to be, but to declare what they are."

For these reasons we accept the interpretation given the statute by the appellate court and affirm its judgment.

*Judgment affirmed.*

JUSTICE UNDERWOOD, dissenting:

I cannot agree that the court's interpretation of section 6—140 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 6—140) either reflects the intention of the legislature or promotes its goals.

The court asserts that it is unnecessary to consider the phrase "current annual salary" in the context of the statu-

tory plan because the phrase is unambiguous. That conclusion is reached by isolating this language from the balance of the statute and ignoring the inconsistent provisions appearing elsewhere therein. When a controversy, as in this case, centers on a word or phrase, it is more important to determine the sense in which that word was used by the legislature than to ascertain its primary meaning. (*City of East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, *cert. denied* (1968), 390 U.S. 948, 19 L. Ed. 2d 1136, 88 S. Ct. 1034.) Accordingly, the legislature's intent must be garnered from an examination of the entire statutory plan. See *Town of the City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 203; *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 511; *Winks v. Board of Education* (1979), 78 Ill. 2d 128, 135.

It is apparent from an examination of article 6 of the Pension Code that the legislature has created a comprehensive scheme of security for firefighters and their dependents. An important feature of this scheme is its stability, which is an advantage to both the beneficiaries and defendant, providing the necessary security to allow sound financial planning. The court concedes that funding and reserve requirements of the system will be substantially increased by its interpretation, but says these requirements are not shown to be beyond the city's capabilities. Whether this is so I cannot ascertain, for the record does not resolve this question. It is clear, however, that when the legislature desired in other instances to provide benefits which would increase in the future, it expressly provided financing for those benefits. (See Ill. Rev. Stat. 1979, ch. 108½, pars. 6—164, 6—164.1.) Those provisions, by carefully delineating the methods of financing, further evidence the legislative goal of establishing a financially stable benefits plan. See M. Gelfand, *Seeking Local Government Financial Integrity Through Debt Ceilings, Tax Limitations, and Expenditure Limits: The New York City Fiscal Crisis, The*

*Taxpayers' Revolt, and Beyond,* 63 Minn. L. Rev. 545, 567 (1979).

More persuasive, perhaps, is the fact that the court's interpretation of "current annual salary" in section 6—140 will, I assume, also have the same effect in the other two sections which employ that phraseology. (See Ill. Rev. Stat. 1979, ch. 108½, pars. 6—148, 6—149.) If so, the court is then attributing to the General Assembly an intent to create the anomalous situation in which substantially greater benefits are provided to dependent parents or children of deceased firemen who had not died in the line of duty than to firemen who became disabled as a result of job-related injuries. (Compare Ill. Rev. Stat. 1979, ch. 108½, pars. 6—148, 6—149, with Ill. Rev. Stat. 1979, ch. 108½, par. 6—151.) This seemingly anomalous result simply strengthens my opinion that the fixed-benefit interpretation of section 6—140 urged by the agency responsible for its administration is far more harmonious with the overall statutory scheme. (*Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 63; *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45.) " 'It must be presumed that the several statutes relating to one subject are governed by one spirit and one policy and that the legislature intended [them] to be consistent and harmonious.' " *People ex rel. Killeen v. Kankakee School District No. 11* (1971), 48 Ill. 2d 419, 423, quoting *Scofield v. Board of Education* (1952), 411 Ill. 11, 20.

Admittedly, firemen are exposed to greater hazards than the average governmental employee, and persuasive arguments can be made for generous treatment of the widows of those firemen killed in the line of duty. But other municipal employees are also exposed to uncommon risks with no corresponding benefits to their widows. Police officers, for example, are subject to dangers at least as great as those facing firemen, but no similar provisions are made for the widows of those killed in the line of duty.

In fact, plaintiff is apparently unable to find in any of

Illinois' pension systems a provision for widow's benefits such as those she argues the legislature has here provided. The reason for their absence is readily apparent, for in 1971 the Illinois Public Employees Pension Laws Commission rejected proposals to base a widow's benefits on salaries of currently employed firemen because of the financial problems involved in funding such payments. The fact that the court's interpretation provides benefits unique in the pension laws of Illinois, coupled with the internal inconsistencies in the Act produced by that interpretation, persuades me of the correctness of the Board's position that the benefits are fixed at the date of the fireman's death.

Before I would attribute to our General Assembly the type of fiscal irresponsibility which has led the city of New York and our social security system to the brink of financial disaster, I would require more convincing proof than is here evident that the Board erred in its interpretation.

JUSTICE MORAN joins in this dissent.