BARBARA A. PURLEE, Plaintiff-Appellant, v. LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.—KATHLEEN L. ALLEN, Plaintiff-Appellant, v. LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 5—92—0065

Opinion filed March 29, 1994.

12

RARICK, J., specially concurring.

Coulson & Grimm, of Collinsville (Wesley J. Coulson, of counsel), for appellants.

Alexander M. Wilson, of Evans & Dixon, of Edwardsville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The matter before us on appeal is a consolidation of two cases filed on December 28, 1990, in the circuit court of Madison County: Barbara A. Purlee v. Liberty Mutual Fire Insurance Co., case No. 90—L—1712, and Kathleen Allen v. Liberty Mutual Fire Insurance Co., case No. 90—L—1713. Plaintiff Purlee appeals from the October 13, 1991, order of the circuit court granting defendant's motion for summary judgment and the December 23, 1991, order of the circuit court denying plaintiff's motion to reconsider. Plaintiff Allen appeals from the December 6, 1991, order of the circuit court granting defendant's motion for summary judgment and the January 24, 1992, order of the circuit court denying plaintiff's motion to reconsider. Plaintiffs present the following issues for our consideration on appeal:

(1) whether the availability of underinsured motorist coverage to a claimant, when the at-fault motorist's liability insurance is exhausted by payments to other claimants injured in the same occurrence, should be determined by comparing the amount of the claimant's underinsured motorist coverage to the stated amount of the at-fault motorist's liability coverage or to the amount the claimant actually recovers from the at-fault motorist's coverage;

(2) whether, if the underinsured motorist coverage statute is interpreted to deny coverage to Purlee and Allen upon the facts they allege, the statute involves an improper legislative classification which denies them equal protection of the laws and due process of law, in violation of the United States and Illinois Constitutions;

(3) whether, in comparing the amount of the claimant's underinsured motorist coverage with the liability coverage of an at-fault motorist who carries combined single-limit coverage, to determine the availability of the underinsured motorist coverage to an occurrence, the amount of the at-fault motorist's liability coverage should be reduced by the amount of property damage coverage required by the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 7—100 et seq.) (applies to Purlee case only);

(4) whether an insurance company, by its conduct in failing to furnish its insured with a copy of her policy despite repeated requests, in failing to timely advise its insured that it denies coverage of her claim, and in failing to offer its insured a reasonable and accurate explanation on the basis of her insurance policy or applicable law why her claim should be denied, is estopped from claiming, in the insured's subsequent suit to recover insurance benefits she claims are due, that coverage does not apply; and

(5) whether the viability of an insured's statutory and common

law causes of action against her insurance company alleging that it violated various provisions of the Illinois Insurance Code (Insurance Code) (Ill. Rev. Stat. 1989, ch. 73, par. 613 *et seq.*) and failed to act in good faith and deal fairly with her in handling her insurance claim depends on whether her underlying insurance claim is resolved in her favor.

Plaintiffs alleged in their respective complaints that they were injured on January 31, 1989, when a motor vehicle driven by Bobby Loew collided with a building in which they were located. The record indicates that plaintiffs and five other individuals were attending a craft class on that date in the building into which Loew's pickup truck crashed and that Loew was charged with driving under the influence of alcohol. Plaintiffs alleged that as a result of that collision, they sustained damages, including severe and permanent injuries, pain and suffering, disability, disfigurement, past and future medical expenses, and past and future lost wages. Plaintiff Allen alleged that her damages exceeded $20,000; plaintiff Purlee alleged that her damages exceeded $100,000.

Plaintiffs alleged that along with the five other persons who were also injured in this accident, they were made party-defendants to an interpleader action filed by Loew's insurance carrier and that the purpose of the action was to divide Loew's $100,000 insurance limit among the seven injured claimants, because Loew's insurance was insufficient to pay such claims in full. In the settlement reached among the seven claimants in the interpleader action, plaintiff Allen received $3,822.39 and plaintiff Purlee received $27,658.14. Plaintiffs Allen and Purlee each alleged in her complaint that the proceeds of the settlement were less than the total amount of her damages.

Plaintiff Allen holds a policy of automobile insurance with defendant including a provision for underinsured motorist coverage in the amount of $50,000 per person. Plaintiff Purlee holds a policy of automobile insurance with defendant including a provision for underinsured motorist coverage in the amount of $20,000 per person, the minimum coverage which is automatically provided in all insurance policies, unless the insured requests a higher limit.

Plaintiffs alleged in their complaints that prior to settlement of the interpleader action, they notified defendant of their intention to enter into the settlement and offered defendant the opportunity to match the proceeds to be paid under the settlement, but defendant elected not to do so. Plaintiffs alleged that after receiving their settlements, they each made a claim with defendant upon the underinsured motorist coverage provision of their respective insurance policies for the remaining unpaid balance of their claims. The record

indicates that the value of plaintiff Allen's case is $22,128.17 and that the value of plaintiff Purlee's case is $134,294.20.

Plaintiffs alleged in their complaints that in breach of defendant's duty under its contracts of insurance with plaintiffs, it refuses to make or offer any payment upon plaintiffs' underinsured motorist coverage claims. Plaintiffs sought damages from defendant for breach of contract. Plaintiffs also included counts in their respective complaints alleging that in its handling of their claims defendant engaged in unreasonable and vexatious conduct entitling them to damages in excess of $15,000 and to reasonable attorney fees, costs, and penalties pursuant to section 155 of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 767). In addition, plaintiffs included counts in their complaints alleging that defendant breached its implied duty to act in good faith and deal fairly with plaintiffs in all matters arising out of and relating to their relationship as insurer and insured and sought compensatory and punitive damages for such breach in excess of $50,000.

Defendant filed a motion to dismiss in each case, alleging that its policy of insurance included a provision requiring the resolution of the action by arbitration and that plaintiff Allen and plaintiff Purlee had not complied with the requirement of demanding arbitration prior to filing suit against defendant. The circuit court ruled, however, that defendant was estopped from raising the argument of plaintiffs' failure to pursue policy arbitration as a defense in this case. We have not been provided with the reports of proceeding for the hearings on defendant's motions to dismiss, but plaintiffs alleged in their complaints that demand had been made with defendant on numerous occasions to provide them with a copy of their insurance policies, that the insurance policies are in the control of defendant, but that defendant has refused to provide a copy of the policies to plaintiffs.

In its answer filed to plaintiff Allen's complaint defendant raised, as an affirmative defense, that Allen's action for coverage under the underinsured motorist coverage provided by her policy with defendant is barred by the terms of that coverage, which applies only when the insurance covering the motor vehicle causing the plaintiff's alleged injuries was less than the underinsured coverage in plaintiff's policy with defendant. Defendant further stated that because plaintiff Allen's underinsured motorist coverage was $50,000 per person and the coverage for the motor vehicle involved in the accident allegedly causing Allen's injuries was $100,000, the terms of the policy bar any underinsured motorist claim by plaintiff Allen. Defendant attached to its answer as exhibit A a copy of plaintiff Allen's insurance policy

with defendant. Plaintiff Allen filed a motion for leave to amend her complaint on September 17, 1991, proposing to add a count for a declaratory judgment to determine the coverage issue raised by defendant in its affirmative defense to her complaint, and the record indicates that such motion was allowed.

Defendant filed a motion for summary judgment in case No. 90—L—1713 against plaintiff Purlee on August 14, 1991, and a motion for summary judgment in case No. 90—L—1712 against plaintiff Allen on September 20, 1991. In its motion directed against plaintiff Allen's complaint, defendant stated that each of the four counts of plaintiff Allen's complaint is premised on a theory that defendant wrongfully or vexatiously refused to pay plaintiff's claim for underinsured motorist coverage. Defendant noted that schedule C of plaintiff Allen's policy defines "underinsured motor vehicle" as a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage. Defendant maintained that because there is no material dispute that plaintiff's underinsured motorist coverage was $50,000 and the alleged tortfeasor's coverage was $100,000, there is no underinsured motorist coverage under plaintiff Allen's policy. Accordingly, defendant prayed for judgment in its favor against plaintiff Allen. Plaintiff Allen filed a cross-motion for summary judgment and for summary determination on count V of her amended complaint, which sought a declaratory judgment that the underinsured motorist coverage in the insurance policy issued by defendant applies and is available to the extent of $46,177.61, the difference between the $50,000 underinsured motorist coverage and the amount she received in settlement from Bobby Loew's insurance company.

In its motion for summary judgment directed against plaintiff Purlee's complaint, defendant stated that plaintiff's claim is based on a theory that the insurance policy was issued to plaintiff with underinsured limits of $20,000, that plaintiff's theory of recovery under the counts of the complaint is that defendant has refused to pay said underinsured coverage amounts and is subject to penalties under section 155 of the Insurance Code and had wrongfully refused to affirm coverage or explain its refusal for payment, and that this vexatious refusal has estopped limits of coverage. Defendant argued that plaintiff Purlee's complaint failed to state a valid claim upon which relief could be granted because the claim in question was clearly excluded by the insuring agreement provisions of the underinsured motorist coverage (paragraph C, subsection 2), which define an underinsured motor vehicle as a land motor vehicle which has a bodily

injury bond or policy limit which is less than the minimum limit for bodily injury liability specified by the Safety Responsibility Law of Illinois. Defendant noted that the bodily injury liability for Bobby Loew's automobile was $100,000. Moreover, defendant asserted, because paragraph B, subsection 2, of the limits of liability provisions of the underinsured motorist coverage would require that any underinsured motorist coverage be reduced by the amount paid by the tortfeasor and $27,658.14 had been paid by the tortfeasor, defendant would have no liability to plaintiff Purlee, in the event $20,000 coverage was found under the policy. A copy of plaintiff Purlee's insurance policy was attached to the motion for summary judgment. Defendant further argued that a Fourth District Appellate Court decision, *Moriconi v. Sentry Insurance of Illinois, Inc.* (1990), 193 Ill. App. 3d 904, 550 N.E.2d 637, mandated summary judgment in its favor on this issue.

Plaintiff Purlee moved to amend her complaint on September 27, 1991, to allege that defendant had breached its duty to properly offer underinsured motorist coverage and that had she been properly advised of the nature and purpose of underinsured motorist coverage she would have elected to obtain such coverage in the amount of her liability coverage, and she sought to reform her policy to provide coverage in the amount of $100,000, the amount of single-limit liability coverage under her policy.

We have not been provided with a report of proceedings for the hearings on defendant's motions for summary judgment and plaintiff Allen's cross-motion for summary judgment and for summary determination. The December 6, 1991, order of the circuit court which entered summary judgment against plaintiff Allen merely recites that defendant's motion for summary judgment is granted, that plaintiff's motion for summary determination of facts is denied, and that there is no just reason to delay the enforcement of this order.

In the October 31, 1991, order of the circuit court which granted defendant's motion for summary judgment against plaintiff Purlee, the court noted that defendant's motion was premised on the proposition that underinsured motorist coverage was excluded by two different policy provisions: (1) paragraph C, subsection 2, which would exclude coverage for plaintiff because the tortfeasor's vehicle was covered by a $100,000 liability policy, which was not less than the amount required by the Illinois Safety Responsibility Law; and (2) no amount would be payable because any amount due under part C would be reduced pursuant to the limit of liability provision, paragraph B, subsection 2, by the amount paid on behalf of the tortfeasor, which was $27,658.14. The court also noted that defendant

had argued that plaintiff Purlee was not an underinsured motorist as defined by section 143a—2(3) of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3)), because the limits of liability on the policy covering the tortfeasor's vehicle were not less than the limits for underinsured motorist coverage provided in the insured's policy. The court agreed that the policy exclusion and statutory definitions of underinsured motorist supported defendant's proposition.

The court noted that in *Moriconi* the appellate court observed that the language of the statute in question was not ambiguous, and absent questions of implied coverage it is clear from a comparison of the coverages of the plaintiff and the tortfeasor that the latter was not an underinsured motorist. With regard to the implied-coverage issue raised in plaintiff Purlee's amended complaint seeking to reform her policy of insurance, the court noted that cases such as *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 1304, interpret section 143a—2 of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2) to require that an insured's underinsured coverage be implied to the limits of bodily injury liability, even if some lesser amount of underinsured coverage has in fact been purchased, where no proper offer of coverage up to the limit of bodily injury coverage had been made. The court observed that if plaintiff's underinsured motorist coverage is extended by implication pursuant to *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1986), 148 Ill. App. 3d 526, 499 N.E.2d 539, *aff'd* (1987), 118 Ill. 2d 430, 516 N.E.2d 268, to the limits of her $100,000 bodily injury liability, the tortfeasor with his $100,000 single-limit liability coverage would still not be an underinsured motorist as defined in section 143a—2(3) because the tortfeasor's limits would be the same as, not less than, the limits for underinsured coverage provided by implication to the insured.

The circuit court rejected plaintiff Purlee's contention, based on *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 545 N.E.2d 1381, that because the property damage claims in the amount of $17,115.09 were presented in the interpleader action involving the tortfeasor's coverage, he should be deemed an underinsured motorist for bodily injury liability to that extent. The court distinguished *Rutter* on its facts, noting that the coverages the court was called upon to compare in that case were $100,000 per person and $300,000 per accident versus a $100,000 single-limit policy with a property damage provision which actually reduced the amount of bodily injury coverage available to the plaintiff. In the instant case, the court noted, the comparison involved two $100,000 single-limit liability coverages, and there was no showing that tortfeasor Bobby Loew's policy required that payments made to all claimants under Loew's

policy include some amount attributable to property damage claims and there was no showing that the interplay of property damage and bodily injury provisions in his policy was less favorable than any similar provisions in plaintiff's policy. The court noted that plaintiff was seeking to have the court imply underinsured coverage in an amount greater than the bodily injury limits originally selected by the insured, a result insupportable under *Fuoss.*

The court also rejected plaintiff Purlee's argument that the tortfeasor should be deemed an underinsured motorist because there were multiple claimants against his policy and the limits of liability coverage available to her under the tortfeasor's policy were in effect less than the limits of her implied underinsured coverage. The court noted that the *Moriconi* case and *Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 452 N.E.2d 49, specifically defeat the multiple-claimant argument and were controlling and binding on the court.

The circuit court ruled in its October 31, 1991, order that defendant's motion for summary judgment was allowed, noting that although the motion was not directed to a particular count of the complaint, resolution of the issues as set out in the order disposed of the entire complaint. Accordingly, the court entered judgment in favor of defendant and against plaintiff Purlee on all counts and denied plaintiff Purlee's motion for leave to amend.

Summary judgment should only be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. (*Giardino v. American Family Insurance* (1987), 164 Ill. App. 3d 389, 390, 517 N.E.2d 1187, 1187.) Moreover, we will reverse the trial court's granting of summary judgment only when there is a material issue of fact and the moving party is not entitled to summary judgment as a matter of law. (*Giardino,* 164 Ill. App. 3d at 390, 517 N.E.2d at 1187.) We note that in each case before us on appeal, summary judgment was granted in favor of defendant because of a finding by the court (albeit implicit in the Allen case) that under the insurance policy exclusions and the insurance statute the tortfeasor was not an "underinsured motorist," precluding recovery by plaintiffs under any of the counts of their complaints. Construction of both the insurance contracts of plaintiffs with defendant and the relevant statutory provisions of the Insurance Code is a question of law, appropriate for resolution by summary judgment. *Giardino,* 164 Ill. App. 3d at 390, 517 N.E.2d at 1187.

We will first examine certain statutory requirements concerning underinsured motorist insurance which were in effect at the time of plaintiffs' accident in January 1989. Section 143a—2 of the Illinois Insurance Code stated in pertinent part:

"(3) *** For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle[ ] is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.

***

(5) On or after July 1, 1983, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless underinsured motorist coverage is included in such policy in an amount equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7—203 of the Illinois Vehicle Code [Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 7—203]." (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2.)

Section 7—203 of the Illinois Vehicle Code, part of what is otherwise known as the Safety Responsibility Law, requires insurance coverage for bodily injury/death in the minimum amount of $20,000 for one person and $40,000 for two persons in any one motor vehicle accident plus minimum coverage of $15,000 for injury or destruction of property of others in any one motor vehicle accident. Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 7—203.

Plaintiff Allen's insurance policy defined an underinsured motor vehicle as "a land motor vehicle *** to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." The policy further provided:

"The limit of liability shown in the Schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy."

As noted above, plaintiff Allen had underinsured motorist liability coverage of $50,000 and carried bodily injury/death liability coverage in the amount of $100,000.

Plaintiff Purlee apparently made no election for underinsured motorist coverage in her insurance contract with defendant, and so defendant provided her with the statutory minimum of $20,000 as required by section 143a—2. Plaintiff Purlee's insurance contract defined "uninsured motor vehicle" as a land motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident and its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the safety responsibility law of the State in which the insured vehicle was principally garaged. The uninsured motorist coverage further provided that any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations which may be legally responsible. Plaintiff Purlee carried bodily injury/death liability coverage under her insurance policy in the amount of $100,000 and alleged in her proposed amended complaint that because defendant failed to offer underinsured motorist coverage, such coverage should be implied by operation of law with limits equal to the amount of plaintiff Purlee's bodily injury liability coverage, or $100,000. See *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268.

If an insurance contract is clear and unambiguous, the words of the policy will be given their plain and ordinary meaning. (*Giardino*, 164 Ill. App. 3d at 391, 517 N.E.2d at 1188.) Defendant asserts that under the plain meaning of plaintiff Allen's insurance policy, the tortfeasor was not an underinsured motorist because the $100,000 limit of the liability policy covering the tortfeasor's vehicle was greater than, not less than, plaintiff Allen's $50,000 underinsured motorist coverage. Similarly, under plaintiff Purlee's policy, defendant asserts that the tortfeasor could not be defined as an underinsured motorist because the $100,000 limit of the liability policy covering the tortfeasor's vehicle was greater than, not less than, the

$20,000 in coverage required under the Illinois Safety Responsibility Law. Defendant further asserts that assuming *arguendo* that a proper tender of underinsured motorist coverage was not found to have been made to plaintiff Purlee such that the court would by operation of law reform the insurance contract to provide for underinsured motorist coverage in the same amount as plaintiff Purlee carried for bodily injury/death liability, the tortfeasor would still not be considered an underinsured motorist for he would have carried liability coverage in an amount equal to, not less than, the $100,000 in liability coverage which would be inferred under plaintiff Purlee's policy.

Plaintiffs assert, however, that a correct construction of section 143a—2 of the Insurance Code will result in a finding that the availability of underinsured motorist coverage to an insured when the tortfeasor's liability insurance is exhausted by payments to multiple claimants in the same occurrence should be determined by comparing the amount of the insured's underinsured motorist coverage to the amount the insured actually recovers from the tortfeasor's liability coverage. Plaintiffs maintain that the intention of the legislature in effecting this statute was to protect the insured against the risk of a lesser recovery if injured by an insured driver rather than by an uninsured driver. Under plaintiffs' proposed construction of the statute which governs the requirements of underinsured motorist coverage in Illinois, plaintiff Allen asserts that she should be entitled to recover the difference between $50,000 and the $3,822.39 she received from the tortfeasor's insurance company and plaintiff Purlee asserts that she should be able to receive the difference between $100,000 and the $27,658.14 she received from the tortfeasor's insurance company.

We note that the trial court rejected plaintiff Purlee's proposed construction of the statute in question in its October 13, 1991, order, noting that the appellate court in *Moriconi v. Sentry Insurance of Illinois, Inc.* (1990), 193 Ill. App. 3d 904, 550 N.E.2d 637, had found that section 143a—2 of the Insurance Code was not ambiguous. The reviewing court explained in *Moriconi*:

> "The provision of that section cited by Sentry concerns the question of whether the alleged tort-feasor's vehicle is underinsured. That portion makes clear that question is determined by comparing the limits of the alleged tort-feasor's liability and the UIM [underinsured motorist] limits of the other vehicle. The provision of section 143a—2(3), cited by plaintiff, concerns the limits upon the amounts the insurer providing UIM coverage is required to pay, *if the alleged tort-feasor's vehicle is underinsured.*

In *Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 452 N.E.2d 49, as here, portions of the limits of the liability policy of an alleged tort-feasor driver were exhausted settling with persons other than those covered by the UIM provision of a policy covering a vehicle involved in a collision with the alleged tort-feasor. The *Price* court noted that under the present section 143a—2(3) of the Code, the fact that the remaining sum available under the alleged tort-feasor's policy was less than the limits of the UIM provision involved did not make the tort-feasor's vehicle an UIM vehicle." (Emphasis in original.) (*Moriconi*, 193 Ill. App. 3d at 908, 550 N.E.2d at 639.)

When an issue involves statutory construction, the court must ascertain and give effect to the legislature's intent and that inquiry appropriately begins with the language of the statute. (*State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 540-41, 605 N.E.2d 539, 542.) The court found in *Moriconi* that the clear intent of section 143a—2(3) is to deem a vehicle to be underinsured only when the total sums available to cover liability of the tortfeasor driver are less than the limits of the underinsured motorist policy. *Moriconi*, 193 Ill. App. 3d at 909, 550 N.E.2d at 639.

A decision of the appellate court, though not binding on other appellate districts, is binding on the circuit courts throughout the State. (*Yapejian*, 152 Ill. 2d at 539, 605 N.E.2d at 542.) Plaintiffs admit that the trial court was bound by the precedent set in *Moriconi* to rule as it did in defendant's motion for summary judgment on the issue of construction of the underinsured motorist provisions of the Insurance Code. Plaintiffs urge this court, which is not so bound, to reject the construction of the statute made by the court in *Moriconi*, arguing that the *Moriconi* court failed to examine and give effect to the second paragraph of the underinsured motorist provisions of section 143a—2, found in subsection (5) thereof. Plaintiffs argue that the *Moriconi* court focused instead upon the two sentences comprising the first paragraph of that provision of the statute, found in subsection (3) thereof. Plaintiffs urge that the language of subsection (5) of section 143a—2 is dispositive of the central issue raised upon this appeal because that paragraph expressly requires that the underinsured motorist coverage be in an amount equal to the total amount of uninsured motorist coverage provided in a policy. Plaintiffs emphasize that the statute does not merely require that the stated limit of the underinsured motorist coverage equal the stated limit of the uninsured motorist coverage; rather, it requires that the *coverages* be equal. Plaintiffs argue that this was the interpretation of the statute given by the court in *Price v. State Farm*

*Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 452 N.E.2d 49, upon which the court in *Moriconi* relied, but which the *Moriconi* court did not understand.

Plaintiffs further state that denial of underinsured motorist coverage to plaintiffs upon the facts they allege is contrary to the public policy of the State favoring the broad availability of insurance coverage. Plaintiffs also contend that if underinsured motorist coverage is held inapplicable to these facts, such coverage is rendered illusory. Plaintiffs further urge this court to reject *Moriconi* because its precedent will lead to harsh and incongruous results.

The reviewing court noted in *Price*:

> "Effective September 3, 1980, not only were insurers permitted to limit total recovery to either uninsured or underinsured coverage if both were applicable, but also the definition of 'underinsured motorist coverage' changed. Instead of being obligated to make up any deficiency between the liability coverage limits of the at-fault vehicle and the uncompensated damages of the insured (up to the limits of the policy), insurance companies were now allowed to restrict recovery to only that deficiency between the total sum recoverable under the policy of the at-fault driver and the maximum limit of the injured party's underinsured motorist coverage *provided that the injured party carried higher amounts of underinsured motorist coverage than did the at-fault driver.* If the two policies provided the same limits of coverage, nothing could be recovered from the injured party's own insurer no matter how extensive his legally recoverable damages." (Emphasis in original.) (*Price*, 116 Ill. App. 3d at 465, 452 N.E.2d at 51.)

The court later explained the effect of the September 1980 change in the statute:

> "As clearly stated in the original version of the statute, the purpose of underinsured motorist coverage was to provide protection against the risk of sustaining damages exceeding the liability limits of insurance carried by the owner of an at-fault vehicle. The original statute focused on the excess damages and defined 'underinsured motorist' as an insured, at-fault driver whose liability coverage limits were insufficient to compensate the injured insured for all damages he was legally entitled to recover. After the statute was amended, however, 'underinsured motor vehicle' was defined as one 'for which the sum of the limits of liability *** is less than the limits for underinsured coverage provided the insured ***.' The meaning of 'underinsured' had been changed from 'insured for less than the legally recoverable damages' to 'insured for less than the insured's underinsured coverage.' Last, the amended statute permitted insurance

companies to limit recovery to the higher of two applicable provisions of coverage; no such limitation was contemplated by the original statute.

It is clear from the above distinctions that the differences between the two statutes reflected a fundamental change in the purpose of underinsured motorist coverage. No longer were uncompensated damages regarded as the risk insured against; under the revised statute, underinsured motorist coverage protected the insured against the risk of a lesser recovery if injured by an insured driver rather than by an uninsured driver." *Price*, 116 Ill. App. 3d at 467-68, 452 N.E.2d at 52-53.

Plaintiffs read the last paragraph quoted above from the *Price* opinion as a construction of the statute that underinsured motorist coverage must insure that a claimant with underinsured motorist coverage receive no less in recovery than if he or she had been injured by an uninsured driver. Plaintiffs assert that if Bobby Loew, the tortfeasor in the instant case, had been uninsured, rather than underinsured, they would have been entitled to a greater recovery than they are under the result reached by the trial court. Plaintiff Allen's settlement demand is for an amount less than her $50,000 in uninsured motorist coverage. Plaintiff Purlee also asserts (if the uninsured portion of her policy is also reformed) that she could have recovered $72,341.86 more with implied uninsured motorist coverage of $100,000.

■ In determining legislative intent, a court may consider the reason and necessity for the law, the evils to be remedied, and the objects to be attained. (*Yapejian*, 152 Ill. 2d at 541, 605 N.E.2d at 542.) In addition, a court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result. (*Yapejian*, 152 Ill. 2d at 541, 605 N.E.2d at 542.) Plaintiffs have referred our attention to numerous cases from other jurisdictions purporting to construe that jurisdiction's underinsured motorist statute as allowing recovery for the difference between the underinsured motorist coverage limit and the amount actually recovered from the at-fault driver's policy. Plaintiffs urge this court to adopt the reasoning of those cases, rather than that of the court in *Moriconi*, in our construction of section 143a—2 of the Insurance Code.

■ In our review of the relevant case law from other jurisdictions, we have reviewed one opinion which discusses the two approaches that have emerged from the language of various State statutes, on the manner in which the tortfeasor's liability insurance coverage is to be set off when underinsured motorist coverage is also sought. (See

*State Automobile Mutual Insurance Co. v. Youler* (1990), 183 W. Va. 556, 396 S.E.2d 737.) The court in *Youler* explained:

"One approach, espoused generally by insurers and explicitly required by several state statutes, is that the tortfeasor's liability insurance coverage is to be set off against the underinsured motorist coverage limits. This type of underinsured motorist legislation, sometimes called reduction-type or decreasing-layer underinsured motorist coverage, is premised upon the idea that the purpose of underinsured motorist coverage is to put the insured in the same position he or she would have occupied had the tortfeasor's liability insurance limits been the same as the underinsured motorist coverage limits purchased by the insured. Part of this level of coverage is provided in effect by the tortfeasor's liability insurance, and the remainder is provided by the underinsured motorist coverage. [Citations.] ***

The second approach to setoffs of liability insurance when underinsured motorist coverage is also sought is that the tortfeasor's liability insurance coverage is to be set off against the amount of *damages* sustained by the injured person, and the insurer providing the underinsured motorist coverage is liable to such injured person, its insured, for any excess, up to the limits of the underinsured motorist coverage. This type of underinsured motorist legislation, sometimes called excess-type or floating-layer underinsured motorist coverage, is premised upon the idea that the injured person is entitled to recover under his or her own underinsured motorist coverage to the extent that the tortfeasor's liability insurance coverage is insufficient to compensate the injured person fully for his or her loss, subject only to the limits of the underinsured motorist coverage." (Emphasis in original.) (*Youler*, 183 W. Va. at 566-67, 396 S.E.2d at 747-48.)

The court cited in a footnote the *Price* case from Illinois as illustrating a statute utilizing the excess-type or floating-layer approach but also noted that the Illinois statute now provides for reduction-type coverage.

■ Plaintiffs ignore the first step in determining the applicability of underinsured motorist coverage clearly stated in subsection (3) of section 143a—2: that the injured party carry higher amounts of underinsured motorist coverage than did the at-fault driver. It is clear that the courts both in *Price* and *Moriconi* recognized this condition precedent under the statute, in the definition of "underinsured motorist." We therefore fail to see what the court in *Moriconi* failed to understand about the court's interpretation of the statute in *Price*. Moreover, the *Youler* case confirms a conclusion that while prior Illinois law may have required that underinsured motorist coverage

provide for insurer liability up to the policy limits, for any excess liability not covered by the tortfeasor's insurance, the statute now provides for reduction-type coverage, the purpose of which is to put the insured in the same position he or she would have occupied had the tortfeasor's liability insurance limits been the same as the underinsured motorist coverage limits purchased by the insured. Thus, where the tortfeasor's liability insurance limits equal or exceed the underinsured motorist coverage limits, underinsured motorist coverage is not applicable.

Although plaintiffs urge that denial of underinsured motorist coverage is contrary to the public policy of the State and that such coverage is rendered illusory under these facts, this court must construe a statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. (*Buckellew v. Board of Education* (1991), 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559.) When permissible under the constitution, statutes should be interpreted and applied in a manner in which they are written; they should not be rewritten by a court to make them consistent with the court's idea of orderliness and public policy. (*Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 220, 447 N.E.2d 394, 399.) We believe that the *Moriconi* court correctly interpreted the underinsured motorist coverage statute.

Plaintiffs contend, however, that if the statute is interpreted to deny coverage upon the facts they allege, the statute involves an improper legislative classification which denies them equal protection of the laws and due process of the law, in violation of the United States and Illinois Constitutions. The Illinois Constitution states:

> "No person shall be deprived of life, liberty, or property without due process of law nor be denied the equal protection of the laws."
> (Ill. Const. 1970, art. I, § 2.)

Plaintiffs argue that the legislation denies equal protection and due process and is therefore unconstitutional special legislation if it is interpreted to apply so that one group of persons affected by the statute would be treated differently from another similarly situated group of people also affected by the statute and there is no reasonable basis for making that classification, citing, *inter alia*, *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19. Plaintiff Allen notes that if she had been the only one injured in the accident or if the tortfeasor had carried no insurance, her claim would have been paid in full. Plaintiff Purlee also notes that because her implied

underinsured motorist coverage and the tortfeasor's policy limits were both in the amount of $100,000, there is no coverage available under the *Moriconi* construction of the statute, and a difference of only $1 in extra coverage on her policy, or $1 less in coverage on the tortfeasor's policy, would have changed that result. Plaintiffs also argue that the doctrine of equal protection of the laws requires that legislative classifications must have some substantial relation to an important State interest in order to pass constitutional scrutiny, citing *Lyons v. Illinois Department of Revenue* (1983), 116 Ill. App. 3d 1072, 452 N.E.2d 830. Plaintiffs argue that the extent to which a claim is compensated should not depend upon the number of injured claimants and the severity of their respective injuries, because such distinctions are arbitrary and irrational.

It is true that plaintiffs have suffered a hardship because the tortfeasor's liability coverage was not sufficient to satisfy the damages of each of the parties who was injured in this accident, and their underinsured motorist coverage, which conforms to the requirements of the statute, is not applicable because the limits of the tortfeasor's policy equal or exceed their underinsured motorist coverage. However, the test is not whether plaintiffs have suffered a hardship, but whether the statute treats similarly situated groups of persons equally. (*People v. Davis* (1991), 221 Ill. App. 3d 1023, 1027, 583 N.E.2d 64, 67.) We believe that it does.

As noted above, the purpose of the statute is put the insured in the same coverage position he or she would have enjoyed had the tortfeasor's coverage been the same as the amount of underinsured coverage. In other words, the purpose of underinsured motorist coverage is to insure that the tortfeasor will have the same amount of liability coverage available as the insured would have chosen. If the tortfeasor has less coverage, underinsured motorist coverage is available under the insured's policy. The problem in the instant cases arose because there was more than one claimant against the tortfeasor's $100,000 policy, not because the *statute* treats these plaintiffs any differently than other purchasers of underinsured motorist coverage in this State. In order to subject a statute to any form of equal protection review, the party challenging the law must show that it classifies persons in some manner. (*People v. Wegielnik* (1992), 152 Ill. 2d 418, 428, 605 N.E.2d 487, 492.) We find that the underinsured motorist coverage statute as interpreted by the court in *Moriconi* does not deny plaintiffs their rights to due process or equal protection under the law.

We note that the provision for underinsured motorist coverage stated in plaintiff Allen's policy is in conformity with the underin-

sured motorist coverage statute. Accordingly, because the $100,000 limits of the tortfeasor's liability coverage exceeded the $50,000 in underinsured motorist coverage provided in plaintiff Allen's policy, the tortfeasor is not considered an underinsured motorist and the coverage provided by the policy is not applicable. We hold that the trial court did not err in granting summary judgment in favor of defendant and against plaintiff Allen on the coverage issue raised by defendant in its affirmative defense to her complaint.

■ Plaintiff Purlee had implied underinsured motorist coverage of $20,000 under her policy and alleged in her amended complaint that the policy of insurance should be reformed to provide for $100,000 of underinsured motorist coverage because defendant failed to properly advise her of the nature and purpose of underinsured motorist coverage and she would have elected to obtain such coverage in the amount of her liability coverage. As noted above, the trial court observed in ruling on defendant's motion for summary judgment that if plaintiff's underinsured motorist coverage were extended by implication pursuant to the *Fuoss* case to the limits of Purlee's $100,000 bodily injury liability, plaintiff would still not be an underinsured motorist as defined in the underinsured motorist statute.

Plaintiff Purlee argues, however, that in determining the availability of underinsured motorist coverage to an occurrence, the amount of the tortfeasor's liability coverage should be reduced by the amount of property damage coverage required by the Illinois Safety Responsibility Law. Plaintiff notes that the face amount of the tortfeasor's policy, $100,000, was combined single-limit coverage applicable to both personal and property damage claims. Plaintiff further notes that the Safety Responsibility Law requires that each motor vehicle liability insurance policy be subject to a limit of not less than $15,000 because of injury to or destruction of property of others in any one motor vehicle accident, citing section 7—203 of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1989, ch. 95$^1$/₂, par. 7—203). Thus, plaintiff argues that the tortfeasor's liability coverage must be construed as being $15,000 for property damage and $85,000 for personal injury, and as such, the tortfeasor would then be considered an underinsured motorist under the statute. Plaintiff further contends that *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 545 N.E.2d 1381, is directly on point.

In *Rutter* the plaintiff had similarly alleged that the insurer failed to make a proper offer to him of underinsured motorist coverage and so he was entitled to implied underinsured motorist coverage in the amount of his bodily injury liability portion of his

policy, which was $100,000 per person/ $300,000 per occurrence. The tortfeasor's liability policy provided single-limit liability coverage of $100,000 but also contained this provision to comply with the Illinois Safety Responsibility Law:

"The limit of Bodily Injury and Property Damage Liability Coverage shall first be

1. $15,000 for all damages arising out of bodily injury sustained by one person as the result of any one occurrence,

2. $30,000 for all damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence, and

3. $10,000 for all damages arising out of injury to or destruction of all property of one or more persons or organizations as the result of any one occurrence. [*sic*] and such limits shall then be supplemented by any amount remaining within the limit for Bodily Injury and Property Damage Liability Coverage stated in the Declarations, which limit is the total amount of the Company's liability for all damages as the result of any one occurrence." (190 Ill. App. 3d at 470-71.)

In *Rutter* the $100,000-per-person limit applied from the tortfeasor's policy, which paid for $16,757.97 in property damage claims as a result of the accident, leaving only $83,242.03 in coverage for bodily injury. The plaintiff in *Rutter* argued that the tortfeasor was underinsured because his coverage provided less than the $100,000 underinsured coverage he alleged should be implied by the court in this case.

The reviewing court held in *Rutter* that under the tortfeasor's policy the bodily injury limits would be less than the $100,000 overall limit since up to $10,000 must be paid for property damage before the bodily injury limits of $15,000 per person and $30,000 per occurrence could be supplemented under the terms of the policy. The court concluded that the offer of underinsured motorist coverage to plaintiff was insufficient but found that there was a genuine issue of material fact with respect to whether plaintiff received the premium information that would have supplied the information missing from the offer. The court remanded the case for further proceedings concerning whether $100,000 in underinsured coverage should be implied.

In the instant case plaintiff Purlee argued that because the property damage claims in the amount of $17,115.09 were presented in the interpleader action involving the tortfeasor's coverage, he should be deemed an underinsured motorist for bodily injury liability to that extent. The trial court found, however, that *Rutter* did not support plaintiff's contention and distinguished *Rutter* on its facts, noting that there was no showing in the instant case that the tortfea-

sor's policy required that payments made to all claimants include some amount attributable to property damage claims and there was no showing that the interplay of property damage and bodily injury provisions in his policy was less favorable than any similar provisions in the plaintiff's policy. The court further noted that plaintiff was seeking to have the court imply underinsured coverage in an amount greater than the bodily injury limits originally selected by the insured, a result unsupportable under *Fuoss*. We agree with the trial court and reject the third issue presented by plaintiff Purlee on appeal. We hold that summary judgment was properly granted in favor of defendant with regard to the coverage issue under plaintiff Purlee's policy.

■ The last two issues presented on appeal involve plaintiffs' allegations that defendant acted vexatiously and in bad faith in dealing with their respective claims for underinsured motorist coverage; that defendant should be estopped from denying the existence of coverage under the policy; and that the viability of their respective claims that defendant engaged in vexatious conduct in dealing with their claims does not depend on whether the underlying claim is resolved in their favor. Plaintiffs cite a violation of section 154.6 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 766.6), which delineates acts constituting improper claims practice.

Plaintiffs claim that defendant's failure to timely deny coverage or to offer any explanation why coverage should be denied was part of the same pattern of conduct which formed the basis of the court's ruling that defendant was estopped from raising the policy defense that arbitration was required before filing suit. Thus, plaintiffs argue, defendant should have been held estopped from raising as a defense that the coverage did not apply. Plaintiffs also claim that violation of section 154.6 of the Illinois Insurance Code provides them with a separate cause of action, regardless of the success of plaintiffs' claim of coverage under their policies, such that the trial court erred in granting summary judgment concerning their claims of vexatious conduct and breach of defendant's implied duty to act in good faith and deal fairly with plaintiffs.

Section 154.6 of the Insurance Code sets forth acts by a company which, if committed without just cause and in violation of section 154.5 of the Code, constitute improper claims practice. (Ill. Rev. Stat. 1989, ch. 73, pars. 766.5, 766.6.) However, while section 154.6 defines acts constituting improper insurance claims practice, it does not give rise to a private cause of action. (*Impex Shrimp & Fish Co. v. Aetna Casualty & Surety Co.* (N.D. Ill. 1985), 686 F. Supp. 183.) The remedy for improper claims practices is stated in section 155 of the Insur-

ance Code (Ill. Rev. Stat. 1989, ch. 70, par. 767), which provides for the taxing of certain extraordinary costs against an insurer that vexatiously and unreasonably refuses to pay. (*Abbott Laboratories v. Granite State Insurance Co.* (N.D. Ill. 1983), 573 F. Supp. 193.) Thus, plaintiffs' claim of estoppel to deny coverage based on any improper claims practices by defendant is without merit. We also note that section 155 preempts the filing of a common law action for breach of an implied covenant of good faith and fair dealing and limits damages to the amount stated in the pertinent provisions. *Trautman v. Knights of Columbus* (1984), 121 Ill. App. 3d 911, 915, 460 N.E.2d 350, 353.

Moreover, where there is a question as to whether a policy was in effect at the time of loss, an insurer's refusal to pay a claim has been held not to be vexatious and without reasonable cause and the insurer is not liable for attorney fees under section 155. (*Holbrook v. Institutional Insurance Co.* (7th Cir. 1966), 369 F.2d 236.) The record indicates that defendant had a legitimate defense to a finding of underinsured motorist coverage under each plaintiff's policy. Section 154.6 of the Insurance Code requires that the specified improper acts by the insurer be committed *without just cause* before those acts constitute improper claims practice. We hold that plaintiffs would have no viable claim for improper claims practice or breach of any duty to deal in good faith and deal fairly with plaintiffs without first showing that they had a legitimate claim for coverage under their policies. Therefore, the trial court's finding in the Purlee case that resolution of the issue of coverage in the summary judgment order disposes of the entire complaint is not erroneous.

We hold that the trial court properly entered summary judgment in favor of defendant and against plaintiff Purlee in case No. 90—L—1712, and that the trial court properly entered summary judgment in favor of defendant and against plaintiff Allen in case No. 90—L—1713. Accordingly, we affirm the December 23, 1991, order of the circuit court of Madison County in case No. 90—L—1712, and affirm the December 6, 1991, order of the circuit court of Madison County in case No. 90—L—1713.

No. 90—L—1712, Affirmed.
No. 90—L—1713, Affirmed.

LEWIS, P.J., concurs.

JUSTICE RARICK, specially concurring:

I concur with the opinion of the majority, albeit reluctantly. The language of both the statute and the contract is clear and unambiguous and admits only one reasonable interpretation, but the result required thereby is in my view inequitable and completely contrary to what I believe the ordinary lay person understands underinsured motorist coverage to be. Indeed, I believe that many an insured will be in for an unpleasant surprise when they seek to recover under the underinsured motorist provision of their policy and find that the protection they thought they purchased is substantially different from that which they actually bought.

While I understand the purpose for the change in the statute as explained in *Price*, I believe that in making this change the legislature has inadvertently created a situation that will result in a hardship for many insureds, particularly in multiple-claim cases such as the present, and ironically it is a hardship that they sought to avoid by purchasing underinsured motorist coverage. Correcting this anomaly, however, is the province of the legislature, not the courts.