CRAIG CUMMINS, Plaintiff-Appellant, v. COUNTRY MUTUAL INSUR-ANCE COMPANY, Defendant-Appellee.

Fifth District   No. 5—94—0821

Opinion filed June 12, 1996.

MAAG, J., specially concurring.

Michael B. Marker, of Carr, Korein, Tillery, Kunin, Montroy & Glass, of East St. Louis, for appellant.

Stephen C. Mudge and Mitchell B. Stoddard, both of Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

Kenneth W. Blan, Jr., of Blan Law Offices, of Danville, for *amicus curiae*.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Craig Cummins, filed suit in the circuit court of St. Clair County to recover underinsured motorist benefits from defendant, Country Mutual Insurance Company. Defendant filed a motion to dismiss plaintiff's complaint on the grounds that the at-fault driver's vehicle was not "underinsured." The trial court ultimately granted defendant's motion, and plaintiff now appeals. The sole issue we are asked to consider is whether a beneficiary of an underinsured

motorist policy can state a valid claim for such coverage when the at-fault motorist's liability insurance, which has identical policy limits as the underinsured motorist coverage, is exhausted by payments to other claimants in the same occurrence. The Illinois Trial Lawyers Association filed an *amicus curiae* brief in support of plaintiff. We reverse and remand.

## I

Plaintiff sustained damages exceeding $50,000 in a two-car collision. At the time of the accident, plaintiff was covered by an insurance policy with defendant which provided for underinsured motorist benefits in the amount of $50,000 per person and $100,000 per accident. These limits were identical to the limits found in the at-fault motorist's liability insurance. Plaintiff received a court-approved, good-faith settlement of $35,000 from the at-fault driver, with the balance of the liability insurance proceeds going to passengers in the at-fault driver's vehicle. Plaintiff filed suit seeking the $15,000 differential between the $35,000 which he received from the at-fault driver and the $50,000 limit of defendant's underinsured motorist coverage. Plaintiff is the sole claimant to defendant's underinsured motorist coverage.

Defendant filed a motion to dismiss plaintiff's complaint, arguing that the at-fault driver's vehicle was not "underinsured" under similar definitions of that term contained in both the policy in issue and section 143a—2(4) of the Illinois Insurance Code (the Code). 215 ILCS 5/143a—2(4) (West 1992). Defendant argued that even though the at-fault driver did not indemnify plaintiff up to the limits guaranteed by defendant's underinsured motorist coverage, the at-fault driver's vehicle was not underinsured because the limits of liability coverage were equal to the limits of defendant's underinsured motorist coverage. Initially, the trial court denied defendant's motion to dismiss on the basis of *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 591 N.E.2d 427 (1992). However, in light of this court's decision in *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 631 N.E.2d 433 (1994), the trial court felt obligated to reconsider its original ruling and grant defendant's motion to dismiss. Plaintiff now appeals from the trial court's order dismissing plaintiff's complaint.

## II

The parties agree that the issue we are asked to address is similar to the issue presented in *Purlee*, namely, whether a beneficiary of an underinsured motorist policy can state a valid claim for such coverage when the at-fault motorist's liability insurance, which has identical policy limits as the underinsured motorist coverage, is

exhausted or reduced due to payments made to other claimants in the same occurrence. In *Purlee*, the issue was framed as follows:

"(1) whether the availability of underinsured motorist coverage to a claimant, when the at-fault motorist's liability insurance is exhausted by payments to other claimants injured in the same occurrence, should be determined by comparing the amount of the claimant's underinsured motorist coverage to the stated amount of the at-fault motorist's liability coverage or to the amount the claimant actually recovers from the at-fault motorist's coverage." *Purlee*, 260 Ill. App. 3d at 13, 631 N.E.2d at 436.

The statutory language in issue here is identical to the language under consideration in *Purlee*:

"(4) For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle[ ] is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. *The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.*

On or after July 1, 1983, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless underinsured motorist coverage is included in such policy in an amount equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7—203 of the Illinois Vehicle Code [(625 ILCS 5/7—203 (West 1992))]." (Emphasis added.) 215 ILCS 5/143a—2(4) (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 73, pars. 755a—2(3), (5)).

See *Purlee*, 260 Ill. App. 3d at 20, 631 N.E.2d at 440-41. The policy in question in the instant case defined an underinsured motor vehicle as follows:

"2. **Underinsured motor vehicle** means any type of **motor vehi-**

cle or trailer for which the sum of all liability bonds or policies at the time of an accident [is] less than the limit of this insurance."

It is well settled that when an issue involves statutory construction, the court must ascertain and give effect to the legislature's intent, and that inquiry appropriately begins with the language of the statute. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 540-41, 605 N.E.2d 539, 542 (1992). In determining legislative intent, a court may consider the reason and necessity for the law, the evils to be remedied, and the objectives to be attained. *Yapejian*, 152 Ill. 2d at 541, 605 N.E.2d at 542. In addition, a court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result. *Yapejian*, 152 Ill. 2d at 541, 605 N.E.2d at 542. Under the doctrine of *stare decisis*, when our supreme court has declared law on any point, only it can modify or overrule its previous opinion and lower courts are bound by such decision. *Agricultural Transportation Ass'n v. Carpentier*, 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867 (1953); *Angelini v. Snow*, 58 Ill. App. 3d 116, 118-19, 374 N.E.2d 215, 217 (1978).

In *Purlee*, we determined that the underinsured motorist statute provided for determination of coverage by comparing the amount of underinsured motorist coverage maintained by the injured party to the face amount of liability coverage maintained by the at-fault driver, not the amount actually recovered by the injured party. We concluded that "where the tortfeasor's liability insurance limits equal or exceed the underinsured motorist coverage limits, underinsured motorist coverage is not applicable." *Purlee*, 260 Ill. App. 3d at 27, 631 N.E.2d at 445. However, in a special concurrence written by Justice Rarick, this court recognized the hardship created by denying underinsured motorist benefits under such circumstances. *Purlee*, 260 Ill. App. 3d at 33, 631 N.E.2d at 449 (Rarick, J., specially concurring).

The *Purlee* court's analysis concentrated on the statutory language, stated above, dealing with limits of coverage. In the second sentence, however, the underinsured limits are stated in terms of "the limits of such coverage, less these amounts actually recovered." An underinsurer's exposure, therefore, is the limit of its liability less those amounts actually recovered from the underinsured vehicle's insurer. See *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 591 N.E.2d 427 (1992). We are obligated to read a statute as a whole, not one or two sentences selectively or with undue emphasis. The first sentence defining "underinsured motor vehicle" includes the term "limits of liability." That term is defined in the second sentence (above, emphasis added), clearly modifying the first and defining the term as to the insurer's position. Read together, the insurer is subject

to a liability limit of its coverage, less whatever funds are actually received from the underinsured vehicle's insurer.

In the instant case, plaintiff urges us to reconsider our holding in *Purlee* in light of our supreme court's decision in *Sulser*. The *Sulser* opinion was not argued in *Purlee*. However, the *Sulser* case has been cited herein, and we find it controlling, particularly in terms of the statutory language discussed above.

In *Sulser*, the plaintiff's husband was killed in a motor vehicle accident involving an underinsured motorist. The Sulsers had an insurance policy with the defendant Country Mutual which provided for underinsured motorist benefits in the amount of $100,000. The policy explicitly stated that any amounts received by the insured in worker's compensation benefits would be deducted from Country Mutual's coverage. The plaintiff recovered $50,000 from the underinsured motorist and then sought $50,000 in payment from Country Mutual. The policy provided for $100,000 in underinsured motorist benefits, but only $50,000 was sought to be recovered, as $50,000 had already been recovered from the underinsured motorist. *Sulser*, 147 Ill. 2d at 551-52, 591 N.E.2d at 427-28. Country Mutual claimed that any worker's compensation benefits received by the plaintiff should also be deducted from the $100,000, and since the worker's compensation benefits received by the plaintiff exceeded $50,000, Country Mutual argued it had no further obligation to the plaintiff under the policy. *Sulser*, 147 Ill. 2d at 552, 591 N.E.2d at 428. The *Sulser* court compared the uninsured motorist provisions and underinsured motorist provisions of the Code and found that it was the legislature's intent in enacting both provisions to place the insured in the same position he would have occupied if the tortfeasor carried adequate insurance. The court decided that worker's compensation benefits could be offset against uninsured motorist coverage. The *Sulser* court concluded:

> "Since deducting worker's compensation payments from coverage under his underinsured motorist policy would still fully compensate the policyholder for his injury, *** [ ] *** we hold that workers' compensation benefits may offset payments made by the insurer under underinsured motorist policies." *Sulser*, 147 Ill. 2d at 558, 591 N.E.2d at 430-31.

■ In reaching this conclusion, the *Sulser* court discussed at length the purpose of the underinsured motorist provision. The *Sulser* court quoted from House debates on the proposed provision:

> "On June 20, 1980, during a House debate on the bill that included section 143a—2(3) [now section 143a—2(4)], Representative Telcser, a sponsor of the bill in the House, spoke of the drafters' intent in providing for underinsured motorist coverage:

'The Amendment deals with technical problems that came up regarding an underinsured motorist. As an example: If a loss occurs, the motorist is underinsured, we wanted to be sure that the language set forth that the difference between the claim and the underinsured would be taken care of by your own insurance policy to fill the gap between the claim and the amount available from the underinsured and that there would not be any excessive claim that could be made.' (81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45.)" *Sulser*, 147 Ill. 2d at 556, 591 N.E.2d at 429-30.

The *Sulser* court went on to explain that an insurance provision designed to " 'fill the gap' between the claim and the tortfeasor's insurance was obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy." *Sulser*, 147 Ill. 2d at 556, 591 N.E.2d at 430. Stated differently, "When the insured opts for $100,000 in coverage against either uninsured or underinsured motorist risks, he is assured of receiving no more than that amount." *Sulser*, 147 Ill. 2d at 557, 591 N.E.2d at 430. Most importantly, our supreme court found that by enacting both the uninsured and underinsured motorist provisions, "the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser*, 147 Ill. 2d at 558, 591 N.E.2d at 430. The *Sulser* court concluded:

"The court must assume that, in enacting a statute, the legislature did not intend an absurd result. [Citation.] In enacting [the underinsured motorist provision,] the legislature avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist." *Sulser*, 147 Ill. 2d at 557, 591 N.E.2d at 430.

Although *Sulser* is not directly on point because it involved a setoff of worker's compensation benefits, its discussion of underinsured motorist coverage leaves little doubt as to our supreme court's position. Moreover, *Sulser* is not the only case in which our supreme court has taken a view contrary to our decision in *Purlee*.

In *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 592 N.E.2d 1031 (1992), State Farm sought a setoff from settlements paid by insured drivers against the plaintiff's claims under uninsured motorist policies. *Hoglund* consisted of two consolidated cases in which the plaintiffs were injured through the negligence of both uninsured and insured drivers. Both of the plaintiffs suffered damages in excess of $200,000. Each of the

plaintiffs was the beneficiary of $100,000 in uninsured coverage, while each insured driver had $100,000 in liability insurance and paid that amount to each of the plaintiffs. *Hoglund*, 148 Ill. 2d at 274, 592 N.E.2d at 1032. Because the insured drivers paid the plaintiffs in amounts equal to the limits of the plaintiffs' uninsured motorist coverage, State Farm refused to pay the plaintiffs, claiming a setoff due to policy language providing that "uninsured motorist coverage shall be reduced by any amount paid the insured by any other party" and upon the Code provision granting uninsured motorist carriers subrogation rights to the proceeds of any recovery which its policyholder receives from the liable party. Ill. Rev. Stat. 1985, ch. 73, par. 755a(4) (now 215 ILCS 5/143a(4) (West 1994)); *Hoglund*, 148 Ill. 2d at 275-76, 592 N.E.2d at 1033. The *Hoglund* court refused to give literal interpretation to the policy or the statutory language. *Hoglund*, 148 Ill. 2d at 278, 592 N.E.2d at 1034. Instead, the *Hoglund* court noted that premiums were paid for such uninsured motorist protection and it was the policyholder's reasonable expectation to be protected by uninsured motorist coverage in such a situation. *Hoglund*, 148 Ill. 2d at 278, 592 N.E.2d at 1035. The *Hoglund* court also pointed out that the public policy behind the uninsured motorist statute would be frustrated if State Farm's position was adopted. *Hoglund*, 148 Ill. 2d at 280, 592 N.E.2d at 1035. The *Hoglund* court held that the set-off provision at issue was subject to a second reasonable interpretation and, therefore, was ambiguous. The ambiguity was resolved in favor of coverage for the plaintiffs, and the defendant insurer was entitled to a setoff only to the extent necessary to avoid double recovery. *Hoglund*, 148 Ill. 2d at 280, 592 N.E.2d at 1035.

We note that, like *Sulser*, *Hoglund* is not directly on point to the facts of the instant case because it involved interpretation of the uninsured motorist provision. Nevertheless, because the uninsured and underinsured motorist provisions were enacted for the same purpose, we likewise find *Hoglund* instructive in the instant case. In light of *Sulser* and *Hoglund*, neither of which we considered when deciding *Purlee*, we reach a holding different than the holding in *Purlee*.

We agree that it is absurd to allow a policyholder to receive fewer benefits after being injured by an underinsured driver rather than an uninsured driver, which often happens in multiple-claimant situations such as presented in the instant case. Such an interpretation would effectively nullify the policy and would deny the insured the economic value of insurance coverage for which he paid premiums. *Hoglund*, 148 Ill. 2d at 278, 592 N.E.2d at 1035. Defendant accepted plaintiff's premiums; it is now time for defendant to perform its side of the bargain. Accordingly, we follow the guidance of our supreme

court and the intent of the statute that the relevant factor to be considered is the amount actually recovered from the at-fault driver, not the limits of liability coverage. *Banes v. Western States Insurance Co.*, 247 Ill. App. 3d 480, 486, 616 N.E.2d 1021, 1026 (1993), is an example of the application of *Sulser* and *Hoglund*. The insured in *Banes* filed a declaratory judgment action against her underinsured carrier for the total of coverage, $100,000. The underinsured vehicle's insurer paid $50,000; the insured's damages exceeded both policy limits. Citing *Sulser*, the court reasoned that the set-off provision in the statute was intended to "fill the gap" between any amount recovered from the underinsured driver's insurance and the limit of the insured's policy. *Banes*, 247 Ill. App. 3d at 485, 616 N.E.2d at 1025. The *Banes* court applied the *Sulser* ruling as follows:

"The relevant factor is the amount the plaintiff actually recovered from the tortious driver or drivers and/or workers' compensation. See *Sulser*, 147 Ill. 2d at 557-58.

Plaintiff contracted for $100,000 in underinsured motorist coverage. Under *Sulser*, plaintiff is entitled to a total recovery of $100,000. Plaintiff received $50,000 from King's insurer. Plaintiff therefore needs $50,000 to 'fill the gap' in the coverage. Reducing defendant's payment to $50,000 would 'fill the gap' and ensure that plaintiff receives what she would have recovered had King been insured adequately." *Banes*, 247 Ill. App. 3d at 486, 616 N.E.2d at 1026.

In light of our decision above, the policy provision is ambiguous, subject to a reasonable interpretation other than the one urged by defendant, and therefore must be interpreted in favor of the insured. *Allstate Insurance Co. v. Elkins*, 77 Ill. 2d 384, 396 N.E.2d 528 (1979). The *Hoglund* court's method of determining ambiguity is applicable to the case at hand:

"We cannot ignore that a premium was paid for uninsured motorist protection. If that protection is not there, the policyholder has been denied substantial economic value in return for the premiums which have been paid. At the time coverage was purchased, Mr. Hoglund believed that he was purchasing uninsured motorist protection in the amount of $100,000. After his daughter's claim was filed, however, he was told there was no coverage. In other words, now you have insurance protection; now you don't. While the collection of insurance premiums is an important part of the insurance industry, it is not the only part. Insurers are also expected to honor claims under their policies for which premiums have been paid in good faith.

We believe that the exculpatory language on which State Farm relies cannot be read in isolation. Rather, it must be read in

conjunction with the policyholder's reasonable expectations and it must also be read in conjunction with the public policy behind the uninsured motorist statute and the coverage intended by the insurance policy itself. Moreover, the setoff provision must be read with reference to the facts of the case at hand. When viewed in this way, a latent ambiguity in the policy language is disclosed. Black's Law Dictionary defines a latent ambiguity as a situation:

> 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.' (Black's Law Dictionary 102 (3d ed. 1933).)

With reference to the policyholder's expectations, it is a fact that he paid a premium for $100,000 of uninsured motorist coverage and reasonably expected coverage for damages caused by an uninsured motorist up to that amount. With reference to the facts of the occurrence, it is significant that Miss Hoglund was injured in part by an uninsured motorist and in part by an insured motorist. Although she was paid $100,000 towards her $200,000 of damages by the insured motorist, nothing was paid to her on behalf of the uninsured motorist. The payment for the insured motorist's fault was paid without reference to the uninsured motorist. State Farm is claiming credit for money paid by another party for that fault, which is unrelated to the fault of the uninsured motorist." *Hoglund*, 148 Ill. 2d at 278-79, 592 N.E.2d at 1034-35.

Defendant interprets the policy to deny payment when the limits of coverage are identical. The language of the statute, as well as *Sulser* and *Hoglund*, indicates payment when there is a gap between actual payment by the underinsured and the insured claimant's policy limit. This ambiguity must be resolved in favor of the insured claimant.

■ In the instant case, the amount available for payment is less than the insured's policy limits, the at-fault driver is underinsured, and the insured is entitled to underinsured motorist coverage. Fifteen thousand dollars is the difference, or "gap," between the $50,000 in plaintiff's underinsured limits and the $35,000 he recovered under the at-fault driver's liability policy as one of several claimants. Therefore, plaintiff is entitled to state a claim for $15,000 in underinsured motorist benefits to "fill the gap."

For the foregoing reasons, the judgment of the circuit court of St.

Clair County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

HOPKINS, P.J., concurs.

JUSTICE MAAG, specially concurring:

I concur in the majority opinion. I write separately only to emphasize why the majority decision is correct.

Assume that an automobile accident occurs. Assume further that the driver of vehicle "A" is negligent and is the cause of the accident. The driver of vehicle "A" carries $25,000 in liability coverage. The driver of vehicle "B" carries $25,000 in underinsured motorist coverage. Finally, assume that in vehicle "B" there is one passenger along with the driver of vehicle "B." If the passenger in vehicle "B" immediately files suit and is awarded $25,000, and if the judgment is paid in full by driver "A" 's liability policy, then there would be no coverage left under driver "A" 's policy to pay a judgment later rendered in favor of the *driver* of vehicle "B." The driver of vehicle "B," despite having paid his insurance premium dutifully, would not be entitled to recover anything under his own underinsured motorist coverage *if* the position of Country Mutual in the instant case was adopted. The insurer would have collected the premiums, but the insured would be left without any benefit of the bargain. For the insurer that is a wonderful deal. For the insured it is less than wonderful.

The law ought to make sense. For the law to make sense, "underinsured" must be defined by comparing the amount of underinsured coverage to the amount of liability coverage *available to be collected* from the tortfeasor's liability policy. To the extent that the amount of liability insurance available to be collected from the tortfeasor's insurance company is less than the amount of underinsured motorist coverage, the tortfeasor ought to be held underinsured. I believe that *Sulser* stands for this proposition. I believe the court in *Sulser* was correct. To the extent that *Purlee* is inconsistent with the majority opinion in this case, I believe it was wrongly decided.