NO. 5-95-0255

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              FIFTH DISTRICT

_________________________________________________________________

ROBERT J. HATHAWAY, Administrator of )  Appeal from the

the Estate of Rody Ray Hathaway,     )  Circuit Court of 

deceased, and ERIC W. VAN ZANT,      )  Saline County.  

                                     )

     Plaintiffs-Appellants,          )  

and                                  )

                                     )  

JASON M. BARTON,                     )

                                     )

     Plaintiff,                      )

v.                                   )  No. 91-L-36

                                     )

STANDARD MUTUAL INSURANCE COMPANY,   )

a corporation, and COUNTRY           )

COMPANIES INSURANCE COMPANY, a       )

corporation,                         )

                                     )

     Defendants-Appellees,           )

and                                  )

                                     )

BLAKE E. VAUGHN, LODEWYK C. BORST,   )

PAIGE E. BORST, SOLANGE A . BORST,   )

KAREN S. KNUIST, ROBERT B. KNUIST,   )

and STATE FARM INSURANCE COMPANY,    )

a corporation,                       )  Honorable

                                     )  Arlie O. Boswell, 

     Defendants.                     )  Judge, presiding.  

_________________________________________________________________

     JUSTICE CHAPMAN delivered the opinion of the court:

     Several times in recent years this court has ruled on the

recoverability of underinsured motorist benefits when multiple

claimants exhaust the coverage of the underinsured vehicle.  See

Golladay v. Allied American Insurance Co., 271 Ill. App. 3d 465,

648 N.E.2d 157 (1st Dist. 1995); Illinois Farmers Insurance Co. v.

Tabor, 267 Ill. App. 3d 245, 642 N.E.2d 159 (2d Dist. 1994);

Moriconi v. Sentry Insurance of Illinois, 193 Ill. App. 3d 904, 550

N.E.2d 637 (4th Dist. 1990); Purlee v. Liberty Mutual Fire

Insurance Co., 260 Ill. App. 3d 11, 631 N.E.2d 433 (5th Dist.

1994); Cummins v. Country Mutual Insurance Co., 281 Ill. App. 3d 5,

666 N.E.2d 909 (5th Dist. 1996), appeal allowed, 168 Ill. 2d 586,

___ N.E.2d ___ (1996).  The rulings have been mixed, not only among

the districts, but also within the same district.  See  Purlee v.

Liberty Mutual Fire Insurance Co., 260 Ill. App. 3d 11, 631 N.E.2d

433 (5th Dist. 1994); Cummins v. Country Mutual Insurance Co., 281

Ill. App. 3d 5, 666 N.E.2d 909 (5th Dist. 1996).  We conclude that

beneficiaries of underinsured motorist coverage whose injuries are

not fully compensated for by the coverage on the underinsured

vehicle are entitled to recover under their underinsured motorist

coverage even though the bodily injury liability limits of the

underinsured vehicle are equal to or greater than the underinsured

motorist limits.

     Before we begin the analysis of this problem, a brief general

history of underinsured motorist coverage is in order.  Historical-

ly, underinsured coverage is a complement to uninsured coverage. 

What is uninsured coverage?  Uninsured coverage is insurance that

provides limited benefits to responsible insureds who are injured

in accidents with people who do not carry liability insurance. 

Uninsured coverage enables prudent drivers, who are willing to pay

the appropriate premium, to protect themselves against the

likelihood that they will be involved in an accident with a person

who has no insurance.  Uninsured motorist coverage became generally

available in Illinois in approximately 1963, and it obviously

filled a perceived void in insurance coverage.  The uninsured

motorist coverage in essence said:

     "For an appropriate premium, if you are injured in an

     auto accident, you will be compensated for your injuries

     up to $XXX, even though the other person has no insur-

     ance."

     In 1980, only 17 years after the advent of uninsured motorist

coverage, it became apparent that uninsured motorist coverage alone

was not enough to protect responsible drivers who were willing to

pay appropriate premiums.  The gap in protection for responsible

drivers occurred when the other driver in an occurrence was not

completely uninsured.  If, for example, the driver at fault had

bodily injury liability limits of $20,000 and the injured person

had uninsured motorist limits of $100,000, the injured person could

recover nothing from an uninsured motorist policy.  He or she would

have been better off if the driver at fault had been completely

uninsured instead of only underinsured.  The legislative response

to this problem was to provide for insurance, in fact, to require

insurance companies to offer underinsured motorist coverage.  Ill.

Rev. Stat. ch. 73, par. 755a-1 (West Supp. 1980) (now see 215 ILCS

5/143a-2 (West 1994)). 

     The underinsured coverage was intended to offer responsible

drivers a way to protect themselves not only from uninsured

motorists but also from underinsured motorists.  By paying the

appropriate premium, responsible drivers could be assured that, if

they were injured in an auto accident, they would be able to

recover up to the limits they purchased from their own insurance

companies, regardless of the insurance status of the driver at

fault.  The driver at fault could be completely without insurance,

in which case they could recover the entire amount of their

uninsured motorist coverage limits, assuming of course that their

injuries were severe enough to entitle them to the full amount. 

If, on the other hand, the driver at fault had insurance, and their

injuries were severe enough, they would be able to recover the

entire amount of their underinsured limits, less the amount

recovered from the driver at fault.  In both situations, the

responsible driver was protected up to the limits of the coverage,

whether uninsured motorist coverage or underinsured motorist

coverage.  In both situations, the insurance companies' maximum

exposure was limited to the amount of the coverage selected by

their insureds, and in the case of underinsured coverage, that

exposure would be reduced by the amount their insureds received

from the underinsured driver.  The insurance companies' exposure

was also limited by the limits they imposed of so much per person,

so much per occurrence.  At this point everything seems covered. 

Insureds can purchase the appropriate protection, and insurance

companies will pay the appropriate amounts.

     What happened next?  There was an accident in which several

insureds were injured.  If the driver at fault had been uninsured,

each of the injured insureds would have been able to recover up to

the uninsured limits, assuming that their injuries were that

serious.  What if the driver at fault was underinsured, that is,

what if the limits of the driver at fault were not enough to

compensate all the insureds for the full extent of their injuries? 

Well, most people would say, "Since underinsured motorist insurance

was extended to fill the gap created by underinsured versus

uninsured motorist coverage, obviously the insureds are entitled to

recover up to the limits of their underinsured coverage, less

whatever amounts they can recover from the underinsured driver."  

     Most, if not all, people might see it that way, but the courts

have not.  Beginning with Moriconi v. Sentry Insurance of Illinois,

Inc., 193 Ill. App. 3d 904, 550 N.E.2d 637 (1990), and extending

through Golladay v. Allied American Insurance Co., 271 Ill. App. 3d

465, 648 N.E.2d 157 (1995), most courts have applied the definition

of underinsured vehicle found in the first sentence of section

143a-2(4) of the Illinois Insurance Code (215 ILCS 5/143a-2(4)

(West 1994)) to deprive insureds of the protection they had pur-

chased.  See also Purlee v. Liberty Mutual Fire Insurance Co., 260

Ill. App. 3d 11, 631 N.E.2d 433 (1994); Illinois Farmers Insurance

Co. v. Tabor, 267 Ill. App. 3d 245, 642 N.E.2d 159 (1994).  But see

Cummins v. Country Mutual Insurance Co., 281 Ill. App. 3d 5, 666

N.E.2d 909 (1996). 

     We conclude that Moriconi and the other cases relying solely

on the first sentence of section 143a-2(4) have misconstrued the

statute as applied to the multiple-claimant anomaly.    

     Section 143a-2 of the Illinois Insurance Code that was in

effect at the time of plaintiffs' accident read:  

     "For the purpose of this Act the term `underinsured motor

     vehicle' means a motor vehicle whose ownership, mainte-

     nance or use has resulted in bodily injury or death of

     the insured, as defined in the policy, and for which the

     sum of the limits of liability under all bodily injury

     liability insurance policies or under bonds or other

     security required to be maintained under Illinois law

     applicable to the driver or to the person or organization

     legally responsible for such vehicle and applicable to

     the vehicle, is less than the limits for underinsured

     coverage provided the insured as defined in the policy at

     the time of the accident.  The limits of liability for an

     insurer providing underinsured motorist coverage shall be

     the limits of such coverage, less those amounts actually

     recovered under the applicable bodily injury insurance

     policies, bonds or other security maintained on the

     underinsured motor vehicle."  (Emphasis added.)  Ill.

     Rev. Stat. 1989, ch. 73, par. 755a-2.

     Most of the courts that have construed the statute have

focused on the first sentence and found it unambiguous.  Conse-

quently, they have ignored the legislative history and ruled in the

insurance companies' favor.  Although ambiguity in a statute is one

reason for a court to examine the legislative history, it is not

the only reason.  An examination of the legislative history is also

appropriate if the examination helps to prevent an absurd result. 

See W. Eskridge, Legislative History Values, 66 Chi.-Kent L. Rev.

365 (1990).

     Although most of the cases construing the underinsured

motorist statute have either refused or neglected to examine its

legislative history because they found no ambiguity in it or

because they concluded that it would be inappropriate to look

behind its words, we do not share that view for several reasons.  

     First, as Professor Eskridge points out, although Justice

Holmes' statement, "We do not inquire what the legislature meant;

we ask only what the statute means" (Holmes, Collected Legal

Papers, 207), is often quoted by those reluctant to examine

legislative history, that was not his final word on the subject. 

Holmes also said:

     "It is said that when the meaning of language is plain we are

     not to resort to [extrinsic] evidence in order to raise

     doubts.  That is rather an axiom of experience than a rule of

     law, and does not preclude consideration of persuasive

     evidence if it exists."  Boston Sand & Gravel Co. v. United

     States, 278 U.S. 41, 48, 73 L. Ed. 170, 49 S. Ct. 52, 54

     (1928).   

As Professor Eskridge concludes:  

     "The pragmatic lesson for my historical exegesis is that

     dogmatic positions on the use of legislative history are

     not productive in our representative democracy."  W.

     Eskridge, Legislative History Values, 66 Chi.-Kent L.

     Rev. 365, 440 (1990).

     Second, our supreme court examined the legislative history of

this very statute in Sulser v. Country Mutual Insurance Co., 147

Ill. 2d 548, 591 N.E.2d 427 (1992).

     Finally, it seems to us that legislative history is like a

tool; its use may be appropriate in some instances and not in

others.  In some cases it may not be the best tool, and in others

it will.  In some cases it may offer only a form of crude assis-

tance that offends some purists, but that crude assistance may be

necessary.  The last example brings to mind a story of two hunters

in southern Illinois who had lost their way in the depths of the

Shawnee National Forest.  Not only had they lost their way, they

had also lost their guns, their canteens, and everything but a hand

axe.  These two unfortunates had been stumbling through the woods

for two days when they were able to catch a snapping turtle.  After

chopping off the turtle's head, the first hunter raised the axe to

smash the shell.  The second hunter, a purist, protested, "Wait,

you're going to ruin that beautiful shell."   "Damn the shell,

man!", the first hunter replied, "I'm after the meat!"  

     After beginning with and progressing through Holmes, and after

reviewing and referring to the modern symposium on statutory

interpretations, Symposium On Statutory Interpretation, 66 Chi.-

Kent L. Rev. 301 (1990), and after emerging from the darkness of

the depths of the forest, we turn at last to the legislative

history, and what do we find?

     First, in response to the courts' conclusions about the lack

of ambiguity in statutes dealing with underinsured motorist

coverage, we note that Mr. Bernstein, associate counsel for State

Farm Insurance Companies, stated:

     "Underinsured motorist coverage is not an easy concept to

     grasp.  We doubt if many insurance people or many

     legislators can explain it.  It is doubly difficult,

     therefore, for the public to understand it."  J.

     Bernstein, March 21, 1980, A statement presented at the

     hearing before the Illinois Insurance Laws Study Commis-

     sion regarding Public Act 81-2101, House Bill 961, 1979

     New Laws, at 3.

     Second, Mr. Bernstein explains how to look at underinsured

motorists:

     "We suggest that the proper way to look at underinsured

     motorists is in terms of what this new coverage is

     designed to do.  An insured with high[-]limit uninsured

     motorist coverage is in a better position if injured by

     an uninsured motorist than if injured by an at-fault

     driver carrying minimum bodily injury liability limits. 

     The purpose of underinsured motorist insurance is to put

     an injured insured in the same position after an accident

     with a financially responsible individual (but one who is

     carrying relatively low limits) as he or she would be

     with a financially responsible motorist."  J. Bernstein,

     March 21, 1980, A statement presented at the hearing

     before the Illinois Insurance Laws Study Commission

     regarding Public Act 81-2101, House Bill 961, 1979 New

     Laws, at 3.

     Third, Mr. Bernstein addressed a question that is very close

to the question raised in this case, and he concluded:

     "The liability of the insurer should, therefore, be the

     difference in recoverable limits between the insurance,

     bonds, and other securities available to the tort[]feasor

     to pay for the injury and the uninsured [sic] motorist

     limits carried by the insured.  In other words[,] if an

     insured carries $100,000/300,000 uninsured [sic] motorist

     coverage, he or she knows that in the event of an

     accident caused by the fault of another, protection of at

     least $100,000/300,000 is available at all times regard-

     less of the resources of the tort[]feasor."  (Emphasis

     added.) J. Bernstein, March 21, 1980, A statement

     presented at the hearing before the Illinois Insurance

     Laws Study Commission regarding Public Act 81-2101, House

     Bill 961, 1979 New Laws, at 2-3.  

          "The reason you have underinsured motorists coverage

     is once you agree that there ought to be high[-]limit

     uninsured, you or I are better off being injured by an

     uninsured driver than we are by an insured driver.  And

     so we have to make up this gap so that in the event of an

     injury by an at-fault driver we are in the same position

     regardless of whether he carries any insurance or minimum

     limits.

          *** And what we are talking about *** is the

     difference in recovery, the difference, if you will, in

     recoverable limits between what is available and what is

     purchased by our insured.

          We are not talking about an excess coverage, we are

     talking about putting our policy[]holder in the same

     position if he is struck by an insured low-limit driver

     as he is by an uninsured motorist.  That is the purpose

     of underinsured motorist coverage."  (Emphasis added.) 

     J. Bernstein, March 21, 1980, Hearing before the Illinois

     Insurance Laws Study Commission, House Bill 961, 1979 New

     Laws, at 39-40.  

     The quoted legislative history makes it quite clear that the

statute was intended to provide insureds with protection for the

difference between the recoverable limits from the bodily injury

liability policy and the underinsured motorist policy.  We,

therefore, conclude that the definition of underinsured motor

vehicle in the first sentence of section 143a-2 should not be

allowed to subvert this clear legislative purpose of placing the

injured insured in the same position regardless of whether the

driver of the culpable vehicle is uninsured or underinsured.  The

first sentence cannot be read in isolation.  This situation is

similar to the one described by Justice Heiple in Hoglund v. State

Farm Mutual Automobile Insurance Co., 148 Ill. 2d 272, 592 N.E.2d

1031 (1992):

          "We believe that the exculpatory language on which

     State Farm relies cannot be read in isolation.  Rather,

     it must be read in conjunction with the policyholder's

     reasonable expectations and it must also be read in

     conjunction with the public policy behind the uninsured

     motorist statute and the coverage intended by the

     insurance policy itself.  Moreover, the setoff provision

     must be read with reference to the facts of the case at

     hand.  When viewed in this way, a latent ambiguity in the

     policy language is disclosed.  ***

          ***

          *** Such a result would violate the public policy

     behind the uninsured motorist statute that the injured

     party be placed in the same position as if the uninsured

     driver had been insured.  Additionally, the insurance

     polices at issue were intended to provide coverage for

     damages caused by uninsured motorists.  To allow a

     literal interpretation of the policy language would

     nullify the coverage intended by the policies.  Further,

     to endorse State Farm's interpretation of the setoff

     provision would deny the policyholder substantial

     economic value in return for the payment of premiums. 

     That is to say, the insured would be denied the very

     insurance protection against uninsured motorists for

     which he had paid premiums."  Hoglund, 148 Ill. 2d at

     279-80, 592 N.E.2d at 1034-35.

     In summary, we reverse the trial court for two reasons. 

First, the statutory definitions, when considered in conjunction

with their legislative history, mandate the coverage.  Second, a

reading of both the policies and the statute with the

policyholder's reasonable expectations and the public policy behind

the underinsured motorist coverage in mind requires this court to

reach the same conclusion that the supreme court reached in

Hoglund.  

     We agree with Justice Maag that "the law ought to make sense"

and feel that his recent illustration bears repeating:

          "Assume that an automobile accident occurs.  Assume

     further that the driver of vehicle `A' is negligent and

     is the cause of the accident.  The driver of vehicle `A'

     carries $25,000 in liability coverage.  The driver of

     vehicle `B' carries $25,000 in underinsured motorist

     coverage.  Finally, assume that in vehicle `B' there is

     one passenger along with the driver of vehicle `B.'  If

     the passenger in vehicle `B' immediately files suit and

     is awarded $25,000, and if the judgment is paid in full

     by driver `A''s liability policy, then there would be no

     coverage left under driver `A''s policy to pay a judgment

     later rendered in favor of the driver of vehicle `B.' 

     The driver of vehicle `B,' despite having paid his

     insurance premium dutifully, would not be entitled to

     recover anything under his own underinsured motorist

     coverage if the position of Country Mutual in the instant

     case was adopted."  Cummins v. Country Mutual Insurance

     Co., 281 Ill. App. 3d 5, 15, 666 N.E.2d 909, 915 (1996)

     (Maag, J., specially concurring).      

     We now turn from our review of the underinsured motorist

statute and its legislative history to the facts of this case.

     Robert Hathaway, on behalf of Rody Hathaway, and Eric Van Zant

and Jason Barton filed a five-count complaint for damages arising

out of a motor vehicle accident in which Rody Hathaway was killed

and Jason Barton and Eric Van Zant were injured.  Only counts III

and IV are the subject of this appeal.  The other counts have

either been settled or dismissed.  As a result of settlements, the

plaintiffs received the following sums:  Karen Knuist $36,523.77,

Jason Barton $20,870.73, Eric Van Zant $15,653.04, Paige Borst

$10,435.36, Robert Knuist $10,435.36, Lodewyk Borst $5,217.68, and

the Rody Hathaway estate $5,217.69.  

     In count III, Van Zant sought underinsured motorist benefits

from his Country Mutual insurance policy which had underinsured

motorist benefits of $50,000 per person.  In count IV plaintiff

Hathaway sought underinsured benefits from his Standard Mutual

policy which had underinsured benefits of $25,000 per person.  Each

of the plaintiffs claimed the difference between the underinsured

motorist limits on their own policies and what they had actually

received from the bodily injury/death limits of the other vehicles. 

The trial court granted Country Mutual's motion to dismiss count

III on the pleadings and Standard Mutual's motion for summary

judgment as to count IV.  Robert Hathaway, on behalf of Rody

Hathaway's estate, and Eric Van Zant appeal from the dismissal of

counts III and IV.  

     The definitions of underinsured motorist vehicle contained in

the Hathaway and Van Zant policies mirror the statutory language of

section 143a-2.  We conclude that those policy definitions, like

that in the statute, cannot be used to deprive the insureds of the

coverage they clearly intended to purchase.

     Therefore, the judgment of the circuit court is reversed, and

this case is remanded for further proceedings consistent with this

opinion.  

     Reversed and remanded.  

     JUSTICE KUEHN, specially concurring:

     Our opinion today differs from views taken by other members of

this court.  Their views flowed inexorably from a paramount rule of

statutory construction that prevents a search for meaning beyond

unambiguous statutory language.  While I concur with Justice

Chapman's opinion, I wish to underscore that the origins of our

approach can be found in the words of our supreme court, first

noted in Cummins v. Country Mutual Insurance Co., 281 Ill. App. 3d

51, 666 N.E.2d 909 (1996).  Our approach does not pioneer an

uncharted course by looking beyond the language contained in the

underinsured motorist statute.

     In Sulser v. Country Mutual Insurance Co., 147 Ill. 2d 548,

591 N.E.2d 427 (1992), the supreme court stated:

          "The court must assume that, in enacting a statute,

     the legislature did not intend an absurd result.  [Cita-

     tions.]  In enacting [the underinsured motorist provi-

     sion] the legislature avoided the absurdity of a situa-

     tion where a policyholder would receive fewer benefits in

     the fortuitous event of being injured by an underinsured

     rather than an uninsured motorist."  Sulser, 147 Ill. 2d

     at 557, 591 N.E.2d at 430.

The court instructed consideration of legislative intent based upon

the words of the House bill's sponsor, Representative Telcser, who

said, "we wanted to be sure that *** the difference between the

claim and the underinsured would be taken care of by your own

insurance policy to fill the gap between the claim and the amount

available from the underinsured ***."  (Emphasis added.)  Sulser,

147 Ill. 2d at 556, 591 N.E.2d at 430 (citing 81st Ill. Gen.

Assem., House Proceedings, June 20, 1980, at 44-45).

     Had the plaintiffs in our case been injured by an uninsured

motorist, each could have recovered any amount up to the full

limits of their own uninsured motorist coverage.  Since the amount

available from the underinsured motorist has been exhausted,

plaintiffs are entitled to "fill the gap" between the available

amount received and their own underinsured motorist coverage.  To

otherwise construe the underinsured motorist provision would ignore

its drafters' intent in favor of one which produces absurd results.

     I, therefore, specially concur.

     JUSTICE GOLDENHERSH, specially concurring:

     While agreeing with the result reached by Justice Chapman, I

concur in the special concurrence filed by Justice Kuehn and add

some comments of my own.

     One should not conclude that this court has embarked on a new,

uncharted route of statutory interpretation and use of legislative

history.  The result reached by the majority opinion is the product

of substantive and statutory interpretation of precedents set forth

by our supreme court.

     We noted in Cummins v. Country Mutual Insurance Co., 281 Ill.

App. 3d 5, 666 N.E.2d 909 (1996), that an analysis in statutory

interpretation must include an entire statute and not selectively

concentrate on one sentence or another of a multisentence section. 

As Justice Kuehn notes in his special concurrence, the legislative

intent of the statute in question was clearly set forth by the

bill's sponsor in the House of Representatives, Representative

Telcser.  When faced with an ambiguity, our supreme court in

Hoglund v. State Farm Mutual Auto Insurance Co., 148 Ill. 2d 272,

592 N.E.2d 1031 (1992), explained the proper method of analysis and

resolution of that ambiguity.  Hoglund, 148 Ill. 2d at 278-79, 592

N.E.2d at 1034-35.  Applying this method, the Cummins court

concluded that the statute in question was ambiguous.  

     The result reached by this court in the instant case also

follows the lead of supreme court cases in similar circumstances. 

The ambiguity of the statute, the legislative history of the

statute as articulated by its sponsor in the House, and the

practical effect of not filling the gap between purchased insurance

and actual recovery have been noted by our supreme court in Sulser

v. Country Mutual Insurance Co., 147 Ill. 2d 548, 591 N.E.2d 427

(1992), and in Hoglund.  The Hoglund court also indicated that the

General Assembly's public policy behind the uninsured motorist

statute applicable to the underinsured motorist statute as well

would be frustrated if the insurance company's position, similar to

defendants' position in this case, were adopted.  (For the impor-

tance of public policy considerations, see American Federation of

State, County & Municipal Employees, AFL-CIO v. Department of

Central Management Services, No. 79376 (Ill. September 19, 1996).) 

As the uninsured and underinsured motorist provisions embodied the

same public policy considerations and were aimed at achieving

similar results, the authorities noted above more than justify our

conclusion in the instant case.

     For the above-stated reasons, I specially concur in the

majority opinion and concur in the special concurrence by Justice

Kuehn.

                                      NO. 5-95-0255

                                     IN THE

                          APPELLATE COURT OF ILLINOIS

                                 FIFTH DISTRICT

___________________________________________________________________________

ROBERT J. HATHAWAY, Administrator of )  Appeal from the

the Estate of Rody Ray Hathaway,     )  Circuit Court of 

deceased, and ERIC W. VAN ZANT,      )  Saline County.  

     Plaintiffs-Appellants,          )  

and                                  )

JASON M. BARTON,                     )

     Plaintiff,                      )

v.                                   )  No. 91-L-36

STANDARD MUTUAL INSURANCE COMPANY,   )

a corporation, and COUNTRY           )

COMPANIES INSURANCE COMPANY, a       )

corporation,                         )

     Defendants-Appellees,           )

and                                  )

BLAKE E. VAUGHN, LODEWYK C. BORST,   )

PAIGE E. BORST, SOLANGE A . BORST,   )

KAREN S. KNUIST, ROBERT B. KNUIST,   )

and STATE FARM INSURANCE COMPANY,    )  Honorable

a corporation,                       )  Arlie O. Boswell, 

     Defendants.                     )  Judge, presiding.  

___________________________________________________________________________

Opinion Filed:                 November 22, 1996

___________________________________________________________________________

Justices:      Honorable Charles W. Chapman, J.

                         

               Honorable Clyde L. Kuehn, J., and

               Specially concurring

               Honorable Richard P. Goldenhersh, J.,

               Specially concurring

___________________________________________________________________________

                         

Attorneys      Jon E. Rosenstengel, Bonifield & Rosenstengel, 16 East Main

for            Street, Belleville, IL  62220; Edward J. Kionka, 218 Lesar

Appellant      Law Building, P.O. Box 10, Carbondale, IL  62903; M. Keith

               Smith, 2900 Broadway, P.O. Box 745, Mt. Vernon, IL  62864

___________________________________________________________________________

Attorneys      Michal Doerge, Jelliffe, Ferrell & Morris, 108 East Walnut 

for            Street, Harrisburg, IL  62946 (for Standard Mutual Insurance

Appellee       Company)

               Robert Michael Drone, Conger & Elliott, Prof. Corp., Farm 

               Bureau Building, Box 220, Carmi, IL  62821-0220 (for Country

               Companies Insurance Company)  

___________________________________________________________________________