LARRY S. SMITH, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)  No. 1—95—1475

Opinion filed July 21, 1997.—Rehearing denied October 14, 1997.—Modified opinion filed October 20, 1997.

O'BRIEN, J., specially concurring.
GALLAGHER, J., specially concurring.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Bruce M. Kohen, Scott H. Rudin, and Darius H. Bozorgi, of counsel), for appellant.

Ross & Hardies, of Chicago (Peter J. Valenta and Thomas D. Titsworth, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Larry Smith appeals an order of the circuit court of Cook County granting judgment on the pleadings to defendant Allstate Insurance Company (Allstate) in a declaratory judgment action.

The record on appeal indicates that on July 8, 1994, plaintiff filed a complaint for declaratory judgment against defendant. The complaint alleged that on January 21, 1993, plaintiff was driving a car east on Golf Road, near the intersection with Narragansett Street, in Morton Grove. Michael Garrity was driving west on Golf Road; Brian Barry and Brendan Mahoney were passengers in the car Garrity was driving. According to the complaint, Garrity negligently caused a collision between the car he was driving and Smith's car. Plaintiff's complaint further alleges that the collision caused him to suffer severe and permanent injuries, including spinal injuries, incomplete paraplegia, prosthetic hypertrophy and sexual dysfunction.

Plaintiff, plaintiff's wife, Mahoney, the estate of Barry and three Barrys individually (the Barrys), all filed suit against Michael Garrity and John Garrity, the owner of the car operated by Michael Garrity. On January 21, 1993, Michael Garrity was an insured driver under a policy issued by State Farm Insurance Company (State Farm)

to John Garrity, the owner of the car operated by Michael Garrity. The single-limit liability coverage under the State Farm policy was $100,000 per person/$300,000 per occurrence. Michael Garrity also had $2 million in umbrella coverage from State Farm at the time of the collision. Thus, the maximum coverage available to satisfy the aforementioned claims was $2,300,000.

During the pretrial proceedings in this related matter, State Farm agreed to tender the policy limits on behalf of the Garritys, provided that the matter was settled as to all four claimants. On March 16, 1994, the trial court entered an order granting the Garritys' motion for a good-faith settlement order. The order dismissed the claims against the Garritys with prejudice and without costs, with the following amounts being paid in settlement: (1) Larry Smith—$600,000; (2) Phyllis Smith—$350,000; (3) the Barrys—$950,000; and (4) Mahoney—$400,000. A claim filed by the Barrys against Larry Smith was also dismissed with prejudice, without costs or any amount being paid in settlement.

Plaintiff's complaint for declaratory judgment alleged that on January 21, 1993, plaintiff's car was insured by defendant Allstate. Plaintiff had $1 million of underinsured motorist (UIM) coverage under the Allstate policy. Plaintiff demanded that Allstate tender a $400,000 draft, representing the difference between the limit of the Allstate policy and the amount plaintiff received in settlement of his claim against the Garritys. Allstate refused on the ground that the limits of the Garritys' policies exceeded the Allstate UIM coverage.

On October 17, 1994, defendant Allstate filed a motion for judgment on the pleadings, pursuant to section 2—615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1994)). On March 31, 1995, following a hearing on the matter, the trial court granted defendant's motion. Plaintiff filed a timely notice of appeal to this court on April 25, 1995.

## I

■ On appeal, plaintiff contends that the trial court erred in granting judgment on the pleadings. A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by the complaint or, alternatively, whether the defendant by his or her answer has set up a defense that would entitle him or her to a hearing on the merits. *TDC Development Corp. v. First Federal Savings & Loan Ass'n*, 204 Ill. App. 3d 170, 173, 561 N.E.2d 1142, 1144 (1990). In deciding the motion, the trial court must examine all pleadings on file to determine whether a material factual dispute exists or whether the

controversy can be resolved strictly as a matter of law. *TDC Development Corp.*, 204 Ill. App. 3d at 173, 561 N.E.2d at 1144. Judgment on the pleadings is proper if only questions of law and not of fact exist after the pleadings have been filed. *Walker v. State Board of Elections*, 65 Ill. 2d 543, 359 N.E.2d 113 (1976).

■ Although a motion for judgment on the pleadings is similar to a motion for summary judgment insofar as both suggest that no material issue of fact exists, a judgment on the pleadings must rely on the allegations of the complaint to establish the absence of material fact, whereas summary judgment may rely on affidavits and other documents. *Waterfront Estates Development, Inc. v. City of Palos Hills*, 232 Ill. App. 3d 367, 371-72, 597 N.E.2d 641, 645 (1992). In addition, the well-pleaded allegations of the nonmoving party and inferences therefrom are taken as true. See *Mitchell v. Waddell*, 189 Ill. App. 3d 179, 182, 544 N.E.2d 1261, 1262-63 (1989). Given the procedural posture of the case and that the issues concern the interpretation of a statute, the standard of review is *de novo*.

## II

The sole issue on appeal is the interpretation of section 143a—2(4) of the Illinois Insurance Code (215 ILCS 5/143a—2(4) (West 1992)). In recent years, this court has been called upon to rule on the issue of whether an insured may recover under his or her underinsured motorist coverage where the person responsible for the occurrence has coverage limits higher than the insured's underinsured motorist coverage limit, but multiple claimants have exhausted the coverage. On March 31, 1995, the date the trial court granted judgment on the pleadings, every district of this court to consider the issue had ruled in favor of the insurer. *Golladay v. Allied American Insurance Co.*, 271 Ill. App. 3d 465, 648 N.E.2d 157 (1st Dist. 1995); *Illinois Farmers Insurance Co. v. Tabor*, 267 Ill. App. 3d 245, 642 N.E.2d 159 (2d Dist. 1994); *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 631 N.E.2d 433 (5th Dist. 1994); *Moriconi v. Sentry Insurance of Illinois, Inc.*, 193 Ill. App. 3d 904, 550 N.E.2d 637 (4th Dist. 1990). The fifth district, however, has recently reversed its position on this issue. *Hathaway v. Standard Mutual Insurance Co.*, 285 Ill. App. 3d 67 (1996); *Cummins v. Country Mutual Insurance Co.*, 281 Ill. App. 3d 5, 666 N.E.2d 909 (1996), *appeal allowed*, 168 Ill. 2d 586 (1996).[1] The first district, sixth division, has followed *Hathaway* in a case outside the multiple-claimant context. *Koperski*

---

[1]The Illinois Supreme Court issued an opinion affirming the appellate court in *Cummins* on October 2, 1997. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474 (1997). We note, however, that the opinion may be

*v. Amicus Mutual Insurance Co.*, 287 Ill. App. 3d 494, 678 N.E.2d 734 (1997).

■ The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454, 657 N.E.2d 997, 999 (1995). Our supreme court has stated that, in enacting section 143a—2(4), "the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 558, 591 N.E.2d 427, 430 (1992). The *Sulser* court also stated that the purpose of section 143a—2(4) was "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." *Sulser*, 147 Ill. 2d at 555, 591 N.E.2d at 429. The *Sulser* court added that section 143a—2(4) was intended to avoid "the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist." *Sulser*, 147 Ill. 2d at 557, 591 N.E.2d at 430; *cf. Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 280, 592 N.E.2d 1031, 1035 (1992) (rejecting insurer's interpretation of insurance policy that would violate public policy behind uninsured motorist statute and deny policyholder substantial economic value for premiums paid).

■ In this case, the interpretation of section 143a—2(4) offered by Allstate would lead to the sort of result condemned in *Sulser*. If the sum of the applicable limits of the tortfeasor's coverage exceeds the plaintiff's underinsured motorist limits, the plaintiff would be placed in a worse position than he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder. In order to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance, it is necessary to consider that what may be adequate insurance in a single-claimant situation may not always be adequate coverage in a multiple-claimant situation. Otherwise, the insured could be left in the situation of receiving no benefits under a policy for which he has paid a premium due to the fortuitous event of being injured along with others. In addition, cases such as *Golladay* did not address

withdrawn, changed or corrected pending the filing of a petition for rehearing or the disposition of such a petition. See 155 Ill. 2d Rs. 367, 368. Moreover, as this court is denying the petition for rehearing, the date of judgment remains July 21, 1997. *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 427 N.E.2d 523 (1981).

the argument based on *Sulser* or *Hoglund*, as it apparently was not raised there.

Accordingly, we conclude that Garrity's motor vehicle may be considered an underinsured motor vehicle within the scope of section 143a—2(4). This construction conforms to the legislative intent announced by the supreme court. We do not decide any issue regarding other subsections of section 143a—2 or the language of the policy at this time, as section 143a—2(4) was the sole issue before the trial court.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is vacated and the case is remanded for further proceedings consistent with this opinion.

Vacated and remanded.

JUSTICE O'BRIEN, specially concurring:

My concurrence today signals a dramatic change from my concurrence in *Golladay v. Allied American Insurance Co.*, 271 Ill. App. 3d 465, 648 N.E.2d 157 (1995), and requires comment. After much thought and debate, I admit my error in *Golladay* and am convinced that *Cummins v. Country Mutual Insurance Co.*, 281 Ill. App. 3d 5, 666 N.E.2d 909 (1996), *Hathaway v. Standard Mutual Insurance Co.*, 285 Ill. App. 3d 67, 673 N.E.2d 725 (1996), and *Koperski v. Amica Mutual Insurance Co.*, 287 Ill. App. 3d 494, 678 N.E.2d 734 (1997), are the better view on two issues: (1) the interpretation of the first sentence of the statute in question; and (2) inquiry into legislative intent if the statute is not ambiguous.

In *Golladay*, 271 Ill. App. 3d at 468, we held:

"The limit of liability provision in the second sentence of section 143a—2(4) is determinative of the amount the UIM insurer is ·required to pay under its policy if the tortfeasor's vehicle is in fact underinsured; it is not determinative of the status of the tortfeasor's vehicle as underinsured. Whether a vehicle is underinsured is determined solely by application of the first sentence of section 143a—2(4). (*Moriconi*, 193 Ill. App. 3d at 908.)"

However, *Cummins v. Country Mutual Insurance Co.*, 281 Ill. App. 3d at 9-10, states:

"We are obligated to read a statute as a whole, not one or two sentences selectively or with undue emphasis. The first sentence defining 'underinsured motor vehicle' includes the term 'limits of liability.' That term is defined in the second sentence *** clearly modifying the first and defining the term as to the insurer's position. Read together, the insurer is subject to a liability limit of its

coverage, less whatever funds are actually received from the underinsured vehicle's insurer."

In *Golladay*, 271 Ill. App. 3d at 469, we held:

"Plaintiff, arguing the public policy considerations behind the enactment of the underinsured motorist provisions of the Illinois Insurance Code, invites this court to adopt his interpretation of section 143a—2(4) and to reject the holding in *Moriconi* (193 Ill. App. 3d 904, 550 N.E.2d 637). We cannot. An inquiry into public policy in an attempt to construe a statute is unnecessary where the statutory language is clear and unambiguous. (*Chapman v. Richey* (1980), 78 Ill. 2d 243, 399 N.E.2d 1277.) Where, as here, the language of a statute is clear and unambiguous, there is no occasion for judicial construction; the only proper function of a court is to enforce the law as enacted by the legislature according to the plain meaning of the words used. *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076."

The better view is elucidated in *Hathaway v. Standard Mutual Insurance Co.*, 285 Ill. App. 3d at 70-71:

"Most of the courts that have construed the statute have focused on the first sentence and found it unambiguous. Consequently, they have ignored the legislative history and ruled in the insurance companies' favor. Although ambiguity in a statute is one reason for a court to examine the legislative history, it is not the only reason. An examination of the legislative history is also appropriate if the examination helps to prevent an absurd result. See W. Eskridge, *Legislative History Values*, 66 Chi.-Kent L. Rev. 365 (1990)."

The analysis of the legislative intent of this statute in *Hathaway* is definitive, persuasive and, as noted by Justice Gallagher in his concurrence, reasonable and fair.

Accordingly, I concur.

JUSTICE GALLAGHER, specially concurring:

I concur with my colleagues' conclusion in this case.

I do believe, however, that it is important to comment further upon the substantive issues in this case, which will most probably need to be addressed by our supreme court, due to the conflicting decisions of this court. The applicable statutory provision (215 ILCS 5/143a—2(4) (West 1992)) should fairly be interpreted to allow for coverage to the insured for the shortfall between the tortfeasor's limits actually recovered by the plaintiff and the plaintiff's underinsured policy.

Basically, the statute says that the limits of liability for the un-

derinsured carrier are the limits of such coverage ($1 million herein), minus those amounts "actually recovered" from the tortfeasor ($600,000 "actually recovered" by plaintiff herein). Under a reasonable interpretation of the statute, plaintiff would be entitled to a $400,000 payment ($1,000,000 minus $600,000 equals $400,000). Otherwise, the very existence of underinsured coverage will depend upon the variable circumstances involving the number of persons in the accident, who is at fault, whether there is any contributory fault by the plaintiff, and most importantly, what the total coverage of the tortfeasor turns out to be. At the time an insured purchases underinsured coverage, all of these variables are unknown and unknowable to anyone. Therefore, all an insured might be purchasing, as counsel for defendant pointed out during oral argument, is the "potential" for insurance, not real insurance. Unfortunately, an insured is paying real premiums, not virtual or imaginary ones.

Under the defendant's proposed construction, there is no connection between what an insured reasonably believes he purchased and what he obtains. This outcome would be unique in the annals of contract law. A person may think he purchased a million dollars of underinsured coverage when, in truth, he has purchased quite less.

The statutory language supports the following rule: where several claimants vie for the insurance of a single tortfeasor, such that the tortfeasor's coverage is inadequate to fully compensate the injured parties, then an injured party's underinsured coverage should be defined as the difference between the policy's limits and what the insured actually recovers from the tortfeasor. In this case, that would clearly be $400,000.